WILLIAM P. ABEL and Others, Appellants, Impleaded with C. MINER DODSON and Others, Additional Plaintiffs, Appellants, v. CHARLES V. PATERNO and Others, Respondents.*

First Department, June 20, 1935.

* See 153 Misc. 248.

*Hamilton Hicks* of counsel [*Jose R. F. Savage* and *Irwin B. Crosman* with him on the brief; *Hamilton Hicks*, attorney], for the appellants.

*Albert A. Raphael* of counsel [*David J. Gallert* with him on the brief; *Gallert, Hilborn & Raphael*, attorneys], for the respondents.

McAvoy, J.   The appellants are owners of stock and proprietary leases of apartments in a co-operative apartment development known as Hudson View Gardens.   This action is one to recover damages for fraudulent misrepresentations or for fraud and deceit based upon alleged fraudulent representations originally made by the respondents Charles V. Paterno, Vanderbilt Avenue Realty Corporation (formerly Paterno Construction Company) and the defendant Wood, Dolson Company, Inc., and repeated in substance by the respondents Pinehurst Realty Corporation and Karlopat Realty Corporation.   Since the action was severed as to Wood, Dolson Company, Inc., it is not a party to this appeal.

It is charged that the respondents intentionally and dishonestly suppressed and concealed, and falsely and fraudulently represented the following material facts:

(a) That the premises owned by Hudson View Gardens, Inc., were comprised of seven acres of real estate, or at least of more than six acres, whereas, in truth they consisted of not more than three and seven-eighths acres.

(b) That the apartment houses in question " were built to endure and to be maintained at minimum costs," whereas in fact they were not built to endure, but were poorly constructed and could not be maintained at minimum costs, but required, and have continuously required, costly, expensive and extravagant expenditures for maintenance and repair.

(c) That the construction, materials and workmanship that went into the buildings were high grade and expensive and that the enterprise would, therefore, be economical to operate, whereas in truth many important items of construction, materials and workmanship were cheap and of poor quality.

At the outset we agree with the trial court that the claims based upon poor construction, the resulting increased cost of upkeep and

the consequent effect upon the value of the stock are barred by the Statute of Limitations, since these defects could have been discovered soon after the occupancy of the apartments, some eight years before this action was commenced.

A different situation obtains, however, with reference to acreage. The trial court found that at all times since its incorporation Hudson View Gardens, Inc., has not owned more than 3.869 acres of land. Although the court refused to make a specific finding that the respondents Paterno Construction Company, Charles V. Paterno and their agents had represented the property consisted of a tract of land more than six acres in area, the testimony indicates quite clearly that this fact was established by overwhelming proof. An examination of the record leads to the conclusion that this misrepresentation was material and that it was error to refuse to find as requested.

The testimony of the appellants in substance indicates that the representations concerning acreage was an important part of the inducement to enter into the contracts for the purchase of the stock and lease of the apartments. A selling agent impressed upon prospective purchasers that even if the buildings should become worthless and be torn down, the value of the stock would be covered by the land; that the increase in the value of the land would make up more than the depreciation or loss of the value of the buildings. No one may reasonably dispute the fact that there is a difference in value between a plot containing 3.869 acres and one containing six or more acres, anywhere in Manhattan.

The plot extends from Pinehurst avenue to Northern avenue; it fronts about 731 feet on Pinehurst avenue and about 756 feet on Northern avenue. It is agreed that it is very irregular; that its dimensions are not visible to the naked eye; and that they could only be determined by an experienced civil engineer or surveyor after considerable figuring; it was carved out of the twenty acres of land originally acquired by the promotor of the project to avoid speculative building adjoining his home; the area surrounding the development was vacant and views of the property in literature issued showed open spaces and vacant land on all sides. The buildings occupy approximately forty-two per cent of the whole area. The record indicates there was nothing about the physical arrangement of the buildings in relation to the land to disturb the credulity of prospective purchasers.

The form of contract used by the seller contains the following refusal to warrant statements of fact and opinion: " The statements of fact contained herein and in the schedules hereto attached are believed by the Builder and by Wood, Dolson Company, Inc., to

be true. * * * However, it must be understood that neither of them is responsible for any error in either such statements of fact or expressions of opinion." Of course this refusal to warrant could not relieve from liability the maker of fraudulent representations. (*Bridger* v. *Goldsmith*, 143 N. Y. 424.)

In a newspaper article entitled "Dr. Paterno's Own Story" the statement was made that the property, comprising about seven acres, had been used by him for many years for garden purposes. "The Hudson View Gardens Graphic," a prospectus or pamphlet described by the trial court as "advertising literature," contains the statement, repeated a number of times, that the property consists of seven acres; the opening sentence in the plan of organization and subscription agreement reads in part as follows: "Hudson View Gardens consists of a tract of land more than six acres in area."

All these statements with reference to acreage were based on information supplied by the respondent Dr. Paterno, the projector of the development. His testimony is that he did not learn the exact acreage until 1933. It is quite possible he did not know of the exact acreage at the time the statements were made. There is no suggestion in any of the literature that any one other than he was relied upon for any information concerning the land. The representations as to acreage are in no way qualified and they were asserted and reiterated so as to take the form of statements of fact. "Fraud includes the pretense of knowledge when knowledge there is none." (*Ultramares Corp.* v. *Touche*, 255 N. Y. 170.) The following quotation from the opinion of LAMBERT, J., in *Churchill* v. *St. George Development Co.* (174 App. Div. 1), has singular applicability: "Neither may any defendant escape responsibility through plea of lack of personal knowledge of the truth of declarations made by him. The makers of these representations, whether by prospectus or orally, either knew or did not know the actual facts with reference to this tract of land. If they did know and misrepresented, then they are clearly liable for such fraud. If they did not know its condition, then they knew of such lack of knowledge on their own part. Then their statement made as if from personal knowledge is equally fraudulent as though intentionally falsely made. If damage ensues from either of these two situations the person making representations must be held to responsibility. (*Rothschild* v. *Mack*, 115 N. Y. 1; *Kountze* v. *Kennedy*, 147 id. 124; *Hadcock* v. *Osmer*, 153 id. 604.)"

We may assume that the respondents were not knowingly responsible for the issuance of the false representations, but there is no escape from the conclusion that they were at least reck-

lessly or carelessly permitted to be made, for which situation the respondents are answerable. (*First National Bank of Hempstead* v. *Level Club, Inc.*, 241 App. Div. 433.)

It is admitted that the statements in the literature were made for the purpose of inducing the appellants, among others, to purchase stock and enter into leases. It is urged that the appellants entered into the contracts for the primary purpose of acquiring a home. The record shows that some were persuaded to buy additional apartments as an investment. The possibility of enhancement of value was held out as a lure. The size of the acreage was an integral part of the investment. There is nothing unusual in purchasing a home as an investment. The possibility of necessitous selling was not absent from the minds of some of the appellants. When some purchasers formed a corporation for reselling and subleasing the seven-acre feature was advertised. It may well be that the representation as to acreage was not the sole inducing cause. That is not essential. It is enough that appellants were influenced thereby. (*Ochs* v. *Woods*, 221 N. Y. 335.) The rule has been stated in *Redgrave* v. *Hurd* (20 Ch. Div. 1): " If it is a material representation calculated to induce him to enter into the contract, it is an inference of law that he was induced by the representation to enter into it, and in order to take away his title to be relieved from the contract on the ground that the representation was untrue, it must be shewn either that he had knowledge of the facts contrary to the representation, or that he stated in terms, or shewed clearly by his conduct, that he did not rely on the representation."

It is possible that some of the appellants would have purchased even if the acreage had been truthfully represented, but it is not for these respondents to say what would have been done if there had been no fraud. (*Smith* v. *Kay*, 7 Clark's H. L. Cas. 750, 777.)

Respondents contend that the only purpose of owning the stock was the acquiring of the right to occupy a certain, particular apartment for twenty years at the cost of maintenance thereof, plus the right to renewals for such periods of twenty-one years as the majority of the tenants might decide; that the stock was put to this use and in putting the stock to this use the appellants had from the time of the purchase thereof to the time of trial received full value for the amount which they had paid, and, therefore, they have no cause of action in fraud or deceit, irrespective of what representation may have been made. Of course, such argument would not be applicable to apartments bought for investment purposes. But, in any event, we cannot agree with the contention. It may be true that in a co-operative apartment enterprise the primary object is occupancy of an apartment, but the purchaser also becomes the

owner of stock in a real estate holding corporation, the value of which depends in great part on the value of the real estate held. Nor can we go as far as the appellants urge, that the damage here is the difference between the price paid and the present value of the stock. Too many elements have intervened for which the respondents are in no way responsible. The rule applicable here is that expressed in *Reno* v. *Bull* (226 N. Y. 546) as follows: " The purpose of an action for deceit is to indemnify the party injured. All elements of profit are excluded. The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong." The appellants are entitled to recover the difference between the amount paid and the value of what was received.

There is a group of appellants who acquired stock and apartments from the original purchasers. While it was contemplated that the stock and apartments might be resold, the respondents are not answerable to purchasers on resales. The leading case on this phase of the situation was discussed by the Court of Appeals in *Brackett* v. *Griswold* (112 N. Y. 454), where the court said (at p. 471): " The case of *Peek* v. *Gurney* (L. R. 6 E. & I. App. 377) applies with great stringency the rule that to sustain an action for fraudulent representations, a close relation must be shown between the representations and the injury claimed, and, also, that the representations must have been made to influence the conduct of the plaintiff, or of a class of persons in which he was included. That case was much considered, and it was held that false representations contained in a prospectus, issued to induce subscriptions to shares on the organization of a limited company, would not sustain an action in favor of one who was not a party to the original subscription, but who, afterwards, having seen the prospectus, and relying upon it, purchased shares in the market. The judges were of the opinion that, as the prospectus was intended on its face to influence only original subscribers, it was not available to sustain the plaintiff's action, and that the representation, although the remote cause of the injury, was not so connected with it as to constitute, as to the plaintiff, an actionable fraud."

In *Ultramares Corp.* v. *Touche* (255 N. Y. 170), relied on by the appellants, the defendants made the certificate for their employer, knowing that the employer intended to show them to creditors and investors who would be influenced thereby.

Those appellants who assigned their contracts or stock to their respective wives retained the right to recover. (*Fox* v. *Hirschfeld,* 157 App. Div. 366.)

The respondent Karlopat Realty Corporation counterclaimed for the amount of principal of unpaid installment notes of some of the

appellants, who sought an injunction restraining the sale by Karlopat of their stock, it being urged that there had been a waiver of the right to accelerate because of the previous acceptance of payments after the due date. The notes in question contain the following provision: " In the event of my [the maker's] failure to pay any of such instalments at the time above specified therefor, all of the remaining principal and interest shall, at the option of the holder hereof, be immediately due and payable, without notice." After default Karlopat served the makers with notice that it would enforce its rights. Only two responded. There is nothing unfair or inequitable about the acceleration clause and respondent is entitled to enforce it. A distinction must be made, however, as to the two appellants, Stockwell and Tibbals, who made tender after notice. As to these, they are entitled to be relieved from the effect of the default. (*French* v. *Row*, 77 Hun, 380.) The remaining appellants must have the same relief by reason of respondent's stipulation covering the situation. In any event, the respondent Karlopat Realty Corporation concedes that there has been a mathematical error in the computation of the amounts due and the judgments entered thereon.

The judgment, in so far as it dismisses the complaint as to those appellants who did not purchase from respondents, should be affirmed, with costs. In other respects the judgment should be reversed, with costs to the other appellants, and the counterclaims of the defendant Karlopat Realty Company dismissed, with costs; the appellants to have sixty days from entry of the order herein during which to pay any arrears which may be due, an injunction to issue accordingly; and a new trial ordered for the sole purpose of determining the damage suffered by the appellants.

MARTIN, P. J., MERRELL, GLENNON and UNTERMYER, JJ., concur.

Judgment, in so far as it dismisses the complaint as to those appellants who did not purchase from respondents, affirmed, with costs. In other respects judgment reversed, with costs to the other appellants, and the counterclaims of the defendant Karlopat Realty Company dismissed, with costs; the appellants to have sixty days from entry of order during which to pay any arrears that may be due, an injunction to issue accordingly; and a new trial ordered for the sole purpose of determining the damage suffered by the appellants. Settle order on notice reversing findings inconsistent with this determination, and containing such new findings of fact proved upon the trial as are necessary to sustain the judgment hereby awarded.