[Civ. No. 12913. First Dist., Div. One. Mar. 5, 1946.]

THE MORRIS PLAN COMPANY OF CALIFORNIA (a Corporation), Appellant, v. STATE OF CALIFORNIA, Respondent.

416

Samuel S. Stevens and Heller, Ehrman, White & McAuliffe for Appellant.

Robert W. Kenny, Attorney General, and T. A. Westphal, Jr., Deputy Attorney General, for Respondent.

WARD, J.—Plaintiff appeals from a judgment rendered after entry of an order sustaining defendant's demurrer to the complaint without leave to amend. The complaint alleged the payment of taxes, under protest, under section 15a of the Industrial Loan Act, which may be referred to herein as the act. (Stats. 1917, p. 658; Deering's Cal. Gen. Laws, vol. 2, Act 3603, pp. 1325, 1334.) The purpose of the act is to regulate corporations, incorporated under the provisions of the act, in the regular course of business of loaning money and issuing their own installment investment certificates with loans. (§§ 1 and 2, p. 1326.) Section 15a provides: "To defray the costs of administration of this act, including examinations and supervision, the commissioner shall require each company incorporated under and by virtue of the Industrial Loan Act to pay in advance to him its pro rata amount of all such costs as estimated by the commissioner for the ensuing year and it is hereby made the duty of every such company to pay the same. Such pro rata shall be the proportion which its assets bear to the aggregate assets of all companies incorporated under and by virtue of the Industrial Loan Act as shown by the latest annual reports of such companies to the commissioner." Twenty days is allowed within which to pay the assessment, a penalty being fixed of "5 per cent *for each month* or part of a month that such payment may be delayed or withheld." (Italics added.)

The complaint alleges that "On or about the 30th day of November, 1943, the Commissioner of Corporations of the State of California, purporting to act pursuant to the provisions of section 15(a) of the Industrial Loan Act of the State of California (added by Chapter 298, Statutes of 1943), made demand upon plaintiff for the payment to said Commissioner of Corporations of the sum of $5,396.40 claimed to be due from plaintiff pursuant to the provisions of section 15(a) of the Industrial Loan Act as plaintiff's pro rata cost of the administration of said Act, including examination and supervision, for the year 1944 . . .

"On or about the 17th day of December, 1943, plaintiff paid to said Commissioner of Corporations of the State of California the said sum of $5,396.40, which said payment

was made under protest on the grounds set forth in plaintiff's protest . . .

"Said sum . . . is greatly in excess of the actual amount of plaintiff's pro rata cost of the administration of said Act for the year 1944; and in this connection plaintiff alleges that its pro rata amount of the cost of the administration of said Act for the year 1942 amounted to the sum of $547.58, and for the year of 1943 amounted to the sum of $424.83 and plaintiff is informed and believes and, therefore, alleges that its pro rata amount of the cost of administration of said Act for the year 1944 will be approximately the same as its pro rata amount of the cost of administration of said Act for the years 1942 and 1943."

The demurrer sets forth that "said complaint does not state facts sufficient to constitute a cause of action [and] that this court does not have jurisdiction to entertain the above purported cause of action." The court sustained the demurrer without leave to amend "on the ground that the State having failed to give its consent to be sued in an action of this character, the same will not lie."

Appellant presents the question involved as follows: "May the State of California nullify the provisions of the Fourteenth Amendment to the Constitution of the United States guaranteeing the fundamental rights of life, liberty and the protection of property by failure to enact legislation permitting suits to be brought against the State to protect and enforce such rights?" Respondent urges that there are two issues on appeal: "1. May the Superior Court's judgment be sustained on the ground that appellant's complaint does not indicate that the Court had jurisdiction to entertain the proposed cause of action in that the State of California, having failed to give its consent to be sued in an action of this character, the same will not lie?

"2. May the Superior Court's judgment be sustained on any other ground raised by the demurrer, and particularly the ground that the complaint does not state a cause of action in that the action of the Commissioner of Corporations was in accord with a valid and constitutional law, to-wit, section 15(a) of the Industrial Loan Act?"

From this statement of the contentions of the parties it is apparent that it must first be determined whether the state has consented to be sued. This question involves (1) whether the taxpayer has any adequate remedy by which to

test the validity of the assessment other than this suit against the state; (2) whether the assessment, in the event no other adequate remedy is provided, would be unconstitutional as in contravention of article I, section 13, of the state Constitution; and (3) whether the act, in the event the answer to (2) is in the affirmative can be construed to provide for "due process of law."

██ In the present matter respondent suggests that appellant could have refused to pay the tax and that a collection suit by the state would have determined the constitutionality of the assessment and provided the hearing required by the Fourteenth Amendment to the Constitution of the United States and article I, sections 13 and 14 of the Constitution of the State of California. From this it is argued that appellant did not pursue its remedy and therefore may not avail itself of the constitutional privilege in this suit. Payment of the tax is voluntary unless there be a fear on the part of the taxpayer that property will be greatly lessened in value, injured, lost or destroyed, in which event it is ordinarily paid under protest. To obtain the benefit of a constitutional right a taxpayer should not be required to perform a futile or unreasonable act. The payment of the assessment, under protest, was made to protect and secure the enjoyment of a right to which appellant was then immediately entitled. The refusal to pay would have resulted in the infliction of penalties in excess of 60 per cent yearly in the event his refusal was wrongful. The tax was fixed in the sum of $5,396.40. The present contest has covered up to date of submission a period of over two years, which would require a penalty of approximately $12,877.53, or a total of $18,273.93. The infliction of such a penalty, without right of contest prior to payment, is coercive. It means that if the taxpayer is wrong, though he honestly believes he was right, his refusal to pay would cost him in excess of $12,000 plus the assessment of over $5,000. Such a penalty is excessive. (*Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714].) Payment of the tax assessed under threat of such a penalty would make it appear to have been made under compulsion. And if "due process of law" requires a hearing at some late stage in tax proceedings, the dubious privilege of a hearing under these circumstances cannot be held to satisfy the constitutional right.

This conclusion raises the second problem above noted. Here the Legislature adopted a scheme to regulate corpora-

tions in the business of loaning money under certain circumstances. The tax has been imposed with notice but without hearing prior or subsequent to the imposition of the assessment by the commission to determine whether appellant has been justly deprived of property. This appears to be a violation of the due process clause of the United States and the state Constitutions unless at some time in the proceedings under the act it can be said that the taxpayer had a right to a hearing. ▮ The due process clause in its procedural sense is a guarantee that before one may be deprived of property, a hearing must be had before a judicial or quasi judicial body according to established rules of law. (*City of Los Angeles* v. *Oliver*, 102 Cal.App. 299 [283 P. 298]; *Roberts* v. *Wehmeyer*, 191 Cal. 601 [218 P. 22]; *Beck* v. *Ransome-Crummey Co.*, 42 Cal.App. 674 [184 P. 431]; *Overell* v. *Overell*, 18 Cal.App.2d 499 [64 P.2d 483].) The care with which the courts have protected the due process clause is illustrated by the extent to which statutory provisions have been held unconstitutional if ''due process'' was not kept in mind in framing a legislative enactment. ''Thus courts have held that the sale of land to satisfy a void street assessment which the legislature has unconstitutionally attempted to validate; a legislative act divesting the title of the purchaser of property previously mortgaged by his grantor, by a foreclosure suit in which the mortgagor was alone defendant; a denial of recovery for property conveyed under a contract legal when made and legal when the property was conveyed, but which by reason of a change in public policy has become unlawful; and the trying of title to property upon a writ of prohibition, are invalid as depriving parties of their property without due process of law. Again it has been held that laws in respect to liens on wages of attachment or execution debtors cannot constitutionally deprive a debtor of his right to a notice of the claim and an opportunity to dispute it. Nor can the legislature pass a valid law providing for the assessment and summary sale of land without notice to the owner or an opportunity to be heard.'' (5 Cal.Jur., p. 881, § 230.) ▮ The exigencies of the governmental process in tax matters are paramount, and procedural ''due process of law'' is satisfied if at some time, whether in a suit for collection, or subsequent to collection in a suit for a refund of taxes paid under protest, the taxpayer is permitted a hearing. (*Central of Georgia Ry. Co.* v. *Wright*, 207 U.S. 127 [28

S.Ct. 47, 52 L.Ed. 134] ; *Reclamation Dist. No. 108* v. *Evans,* 61 Cal. 104, 107; Annotation—What is necessary to due process of law in tax proceedings, L.R.A. 1916E 5.) As above demonstrated the right of the taxpayer to wait for the state to institute a suit to collect this tax conferred a nebulous privilege which entailed dangers not commensurate with the guarantee of the constitutional right sought to be protected.

It remains to be determined whether the act can be construed so as adequately to protect the taxpayer's constitutional rights in view of the general rule that the Legislature is deemed to have intended a constitutional operation of its acts rather than an unconstitutional one.

Section 23 of the act provides: "Every order, decision, license or other official act of the commissioner shall be subject to review in accordance with law. Upon such review, the burden of proof shall lie upon the appellant, and the court shall receive and consider any pertinent evidence which was introduced in the formal hearing before the commissioner, whether oral or documentary, concerning the action of the commissioner under review, but shall be limited to a consideration and determination of the question whether there has been an abuse of discretion on the part of the commissioner in making such order, decision, finding, requirement, or rule." It may be conceded that primarily the section was enacted to supplement procedure in reference to other sections, for instance, section 11, providing for an "Order to discontinue unsafe practices" and the "Right to take possession of property" and "to liquidate the same in the manner provided by the Bank act." (See, also, § 11a.) However, the section must be construed in accordance with the words used. The section provides: "Every order . . . or other official act . . . shall be subject to review." "Exhibit A" attached to the complaint is in effect a demand and order "To pay in advance" $5,396.40. Attention is called to section 15a of the act, which as heretofore noted, provides for increasing penalties for continued nonpayment. The demand is an official act in the form of an order and subject "to review in accordance with law." (§ 23.)

Respondent contends that the official acts of the commissioner are those, for instance, referred to in sections 11 and 11a and not to the commissioner's act in "assessing" with consequent penalties. Respondent also contends that the re-

view must be from a "formal hearing" and limited to a determination of whether there was an abuse of discretion in making an order. This view might be technically correct if the section did not provide that "Every order . . . shall be subject to review." To adopt respondent's theory only the formal orders would be subject to review and the various assessments and penalties could never be reviewed in a court of justice. If this is true appellant is precluded from maintaining an action to test the legality and propriety of the section of the statute (15a) requiring industrial loan companies to pay in advance a share of the estimated costs of examination and supervision by the commissioner. This condition might result in a declaration that section 15a is unconstitutional as violative of the Fourteenth Amendment of the Constitution of the United States and section 13 of article I of the Constitution of California. Referring to article XIII, section 1¼ of the Constitution of California covering exemptions of veterans it was said in *Chesney* v. *Byram,* 15 Cal.2d 460, 463 [101 P.2d 1106]: "How much exemption could be obtained, would be a matter first for the determination of the assessors of the respective political subdivisions, and in case of their failure to recognize the right granted to the veteran, their action would be *subject to review by the courts.*" (Italics added.) "A legal right without a remedy would be an anomaly in the law." (1 Am. Jur., p. 409, § 9.) "Suffice it to say, that the courts have rarely, if ever, felt themselves so restrained by technical rules that they could not find some remedy, consistent with the law, for acts, whether done by government or by individual persons, that violated natural justice or were hostile to the fundamental principles devised for the protection of the essential rights of property." (*Monongahela Bridge Co.* v. *United States,* 216 U.S. 177, 195 [30 S.Ct. 356, 54 L.Ed. 435].) In California the Supreme Court has recorded its views as follows: "In any event this court is not powerless to formulate rules of procedure where justice demands it. Indeed, it has shown itself ready to adapt rules of procedure to serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits. (*Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Christin* v. *Superior Court,* 9 Cal.2d 526 [71 P.2d 205, 112 A.L.R. 1153]; *Tuller* v. *Superior Court,* 215 Cal. 352 [10 P.2d 43]; see 31 Cal.L.Rev.

225, 227; see, also, *Rogers* v. *Duhart,* 97 Cal. 500, 504 [32 P. 570]; California Constitution, art. VI, § 4½; Code Civ. Proc., §§ 355, 356, 473, 475; Civ. Code, §§ 3523, 3528.)" (*Bollinger* v. *National Fire Ins. Co.,* 25 Cal.2d 399, 410 [154 P.2d 399].)

Having in mind that otherwise the taxpayer would have no opportunity for a hearing to remedy errors in assessments, and that if the act is so construed the assessment is probably unconstitutional, it is concluded that section 23 of the act is an express consent on the part of the state "to review in accordance with law" "every . . . official act of the commissioner." ■ The act, here sought to be reviewed, is the payment under protest of $5,396.40. This sum under the terms of the act "shall be deposited in the State treasury to the credit of the General Fund." (§3a.) The state therefore is a proper party defendant in view of section 23. Whatever the rule previously may have been in relation to the strict construction to be applied to statutes authorizing persons to sue the state as being in derogation of sovereignty, the Supreme Court of this state in 1944 broadened such right. The strict rule heretofore followed appears to have been abrogated as demonstrated in *People* v. *Moroney,* 24 Cal.2d 638 [150 P.2d 888]. In that case, the court was called upon to construe section 4300a of the Political Code. At pages 641-642, the court said: " 'No fee shall be charged by the clerk for service rendered in any criminal action or adoption proceeding, *nor for any service to the State of California.* No fee shall be charged by the clerk for service rendered to any municipality or county in said State, or to the National Government, nor for any service relating thereto, except for making or certifying to a copy of a filed paper, record or proceeding, when not otherwise provided by law.' (Italics added.) It cannot be doubted that that language is broad enough to include an officer of the State as well as the State itself acting in his official capacity on behalf of the State. It has been held that an action against an officer in his official capacity is equivalent to and may be treated as an action against the State or a political subdivision thereof. (See *Bacich* v. *Board of Control,* 23 Cal.2d 343 [144 P.2d 818]; *California Securities Co.* v. *State,* 111 Cal.App. 258 [295 P. 583].) And the Bank and Corporation Franchise Tax Act specifically provides for such

a suit against the commissioner. (§ 30.) Likewise, a suit to recover taxes paid under protest although against a State officer rather than the State is treated as an action against the latter in regard to the immunity of the State from costs. (See *Innes* v. *McColgan*, 52 Cal.App.2d 698 [126 P.2d 930].)''

In *California Securities Co.* v. *State*, 111 Cal.App. 258 [295 P. 583], the opinion sets forth the facts as follows (pp. 260-261): "Briefly, the allegations are that the Secretary of State as such demanded of respondents the payment of moneys under and pursuant to the so-called California Corporation License Tax Act on penalty of having their right to transact business within the state forfeited if they failed so to do; that in order to avoid such forfeitures the moneys were paid under protest to the Secretary of State, who in turn paid them forthwith to the State Treasurer; that the act under which the moneys were collected is void; that demand for a refund was made and refused, and that the moneys were due and owing to respondents.'' The opinion states (p. 260): "The State of California now appeals, alleging as grounds of appeal: (1) That the original actions brought against the Secretary of State were not in fact actions against the State of California; (2) that the order substituting the State of California in the place of said Secretary of State was void . . .'' The court on appeal decided that the order substituting the State in the place of the Secretary of State was of legal force and effect a valid order.

For the foregoing reasons it is concluded that the trial court incorrectly sustained the demurrer on the ground "that the State having failed to give its consent to be sued in an action of this character, the same will not lie.'' And by reason of this conclusion it becomes unnecessary to determine whether article I, section 13 of the Constitution of the State of California in its substantive sense is a self-executing provision which comes within the rule enunciated by our Supreme Court in *Rose* v. *State of California*, 19 Cal.2d 713 [123 P.2d 505], so as to make it possible to sue the state without its consent.

■ However, respondent correctly contends that this court should sustain the judgment below if either ground of demurrer urged in the superior court is good. (*Frasch* v. *London & Lancashire F. Ins. Co.*, 213 Cal. 219 [2 P.2d 147]; *Stratford Irr. Dist.* v. *Empire Water Co.*, 44 Cal.App. 2d 61 [111 P.2d 957]; *Johnson* v. *Fletcher*, 97 Cal.App. 153

[274 P. 1001]; *Burke* v. *Maguire,* 154 Cal. 456 [98 P. 21].) In considering the demurrer all factual allegations alleged in the complaint which are legally provable and not inconsistent with other allegations and not conclusive must be assumed to be true. (*Blake* v. *Blake,* 86 Cal.App. 377 [260 P. 937]; *Hevren* v. *Reed,* 126 Cal. 219 [58 P. 536]; *Smith* v. *Lewis,* 211 Cal. 294 [295 P. 37]; *Katenkamp* v. *Union Realty Co.,* 6 Cal.2d 765 [59 P.2d 473]; *Abroms* v. *New York Life Ins. Co.,* 53 Cal.App.2d 764 [128 P.2d 391]; *Penziner* v. *West American Finance Co.,* 133 Cal.App. 578 [24 P.2d 501].)

 The complaint, though it may be subject to special demurrer, pleads a good cause of action in the plaintiff with all conditions precedent performed and all essential elements present at the time the suit was filed or shows that there is a possibility of pleading such material and relevant matters. (1 Am.Jur., p. 408, § 8.) In the complaint appellant questions the constitutionality of section 15a in the following form: "Plaintiff alleges that section 15(a) of the Industrial Loan Act of the State of California and the assessment levied against plaintiff pursuant to the terms thereof are, and each of them is, invalid, unjust, discriminatory, unequal in their protection of the law in violation of the Fourteenth Amendment of the Constitution of the United States." There are two questions that might be considered in this respect: (1) Do the provisions of the section in and of themselves violate federal or state constitutional provisions and (2) are the facts as alleged sufficient to show that the amount assessed is such a disproportionate, unreasonable and arbitrary assessment that it is in violation of the federal and state constitutional provisions or of either? In the closing brief appellant states its position as follows: "Although appellant's complaint alleges that section 15(a) of the Industrial Loan Act and the assessment levied against appellant pursuant to the terms thereof are, and each of them is, invalid, unjust, discriminatory, and unequal in their operation, appellant does not contend that section 15(a) is in itself invalid and unconstitutional. It is recognized, of course, that industrial loan companies are properly subject to supervision and regulation by State authorities and that said companies may properly be assessed an amount reasonably related to the actual cost of such supervision. However, appellant insists that an assessment for the purpose of regulation hav-

ing no reasonable relation to the actual cost of such regulation is arbitrary, invalid, unjust and discriminatory."

Appellant correctly admits that constitutionally industrial loan companies are subject to proper state regulation. Whether the particular assessment is improper, unjust and discriminatory, and therefore invalid, primarily presents a question of fact. In a supplemental brief appellant asserts: ". . . the Commissioner is attempting to levy a tax against appellant for the purpose of revenue," which presents a question of law. Assuming that only a question of law is presented, the allegations of the complaint plus the statements of appellant are not sufficiently specific to pass upon the constitutionality of section 15a.

The judgment in this case is reversed on the ground that when section 23 is read in conjunction with other sections a fair and just interpretation of the section is that it gives an express consent to sue the state, so far as the facts of this case are concerned. The complaint may be subject to a special demurrer, a point not necessary or advisable to decide at this time. The trial court is directed to set aside that portion of the order sustaining the demurrer *without leave to amend* and in the trial court's discretion permit either plaintiff to amend or defendant to file an amended demurrer. If neither side cares to act, the trial court should proceed to trial.

The judgment is reversed.

Peters, P. J., and Atteridge, J. pro tem., concurred.