[Civ. No. 21692. Second Dist., Div. Two. July 27, 1956.]

JACOB COHEN et al., Appellants, v. CITIZENS NATIONAL TRUST AND SAVINGS BANK (a Banking Corporation), as Executor, etc., Respondent.

Lee W. Landrum for Appellants.

Newton Van Why and Meserve, Mumper & Hughes for Respondent.

MOORE, P. J.—Plaintiffs appeal from a judgment of dismissal after a demurrer to their third amended complaint had been sustained without leave to amend. The complaint alleged, in substance, that:

(1) Plaintiffs are the owners of certain realty in Los Angeles upon which is situated an apartment house known as the Dracker Arms; (2) in the latter part of 1938, Frank Acker owned the realty and constructed the apartments in accordance with a certificate issued by the Department of Building and Safety of the City of Los Angeles; (3) subsequent to the construction of the building, Acker added certain basement apartments without obtaining a permit from the department of building and safety as is required by law. . Uninhibited by the strictures of such a permit, the apartments when constructed violated numerous provisions of the Health and Safety Code in that they illegally caused the structure to become a four-story building, were insufficiently lighted, failed to have properly enclosed staircases, were improperly piped, had sections of unplastered wood, and were improperly arranged; (4) Acker was fully aware of all such violations; (5) in May 1944, Acker sold the premises to Harry and Minnie Dunitz without disclosing any of the above defects with the intent of defrauding the Dunitzes and anyone else who might subsequently purchase the property; (6) after operating the property, presumably without learning of the defects, the Dunitzes sold the property to the plaintiffs in May 1946; at no time were the violations of the Health and Safety Code brought to the attention of the plaintiffs; (7) plaintiffs would not have purchased the property had they known of the existence of the violations; (8) after the construction of the Dracker Arms and until 1952, the apartments had been inspected yearly by the health department without citation. However, in 1952, the health department, having become reinvigorated, cited plaintiffs for violations of the Health and Safety Code and ordered that the basement apartments no longer be occupied; (9) as a result of Acker's actions, plaintiffs were damaged in the sum of $50,000.

The Citizens National Trust and Savings Bank, as the executor of Acker's estate, was substituted as the respondent herein.

▮ In determining whether the trial court properly sustained a demurrer without leave to amend, all factual allegations in the pleading which are legally provable and not inconsistent with other allegations and not conclusive must be presumed to be true. (*Steiner* v. *Rowley*, 35 Cal.2d 713,

717 [221 P.2d 9]; *Hevren v. Reed*, 126 Cal. 219 [58 P. 536]; *Jensen v. City of Modesto*, 89 Cal.App.2d 835, 837 [202 P.2d 332]; *Morris Plan Co. v. State*, 73 Cal.App.2d 415, 425 [166 P.2d 627].) ▮ Since the demurrer was sustained without leave to amend, the question is whether from the facts alleged it is clear that the plaintiff is unable so to amend his complaint as to state a cause of action justifying relief. If so, then there has been no abuse of discretion in refusing leave to amend.

Appellants contend that the complaint is a valid pleading; that it states a cause of action for deceit as authorized by the Civil Code, section 1709. It is apparent from a review of the complaints prior to the third amended version that if the latter fails in any material particular to fulfil the requisites of such an action appellants will be unable to state a cause of action. ▮ The elements of actionable deceit are: a false representation of a material fact made with knowledge of its falsity, or recklessly, or without reasonable grounds for believing its truth, and with intent to induce reliance thereon, on which plaintiff justifiably relies to his injury. (*Gonsalves v. Hodgson*, 38 Cal.2d 91, 100 [237 P.2d 656]; *Barron Estate Co. v. Woodruff Co.*, 163 Cal. 561 [126 P. 351, 42 L.R.A.N.S. 125]; *Schaefer v. Berinstein*, *(Cal.App.) 292 P.2d 604; *Watt v. Patterson*, 125 Cal.App.2d 788, 792 [271 P.2d 200]; Rest., Torts, § 525.) Does appellants' complaint contain facts which embrace all such factors?

Appellants are not to be denied relief merely because Acker made no express representations relative to having acquird a building permit before constructing the basement apartments, or because he did not expressly claim that the apartments complied with the Health and Safety Code. Civil Code, section 1710, defines actionable fraud as ". . . 3. The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact. . . ." It has long been the rule in equity where rescission of a contract is sought on the grounds of fraud that nondisclosure to the vendee may render the contract vulnerable to rescission. Certainly this is especially true where a seller is possessed of knowledge not available to his vendee relative to the item offered for sale which he knew would have caused the vendee

---

*A rehearing was granted on February 10, 1956. The final opinion is reported in 140 Cal.App.2d 278 [295 P.2d 113].

not to buy had the latter been possessed of the information. (*Curran* v. *Heslop,* 115 Cal.App.2d 476, 480 [252 P.2d 378]; *Tatham* v. *Pattison,* 112 Cal.App.2d 18 [245 P.2d 668]; *Kuhn* v. *Gottfried,* 103 Cal.App.2d 80, 86 [229 P.2d 137]; *Clauser* v. *Taylor,* 44 Cal.App.2d 453 [112 P.2d 661]; Rest., Torts, com., § 551, subd. 1; Civ. Code, § 1572.) ■ The same rule has been adopted where the action is brought at law for damages resulting from deceit. (*Kallgren* v. *Steele,* 131 Cal.App.2d 43 [279 P.2d 1027]; *Barder* v. *McClung,* 93 Cal.App.2d 692, 697 [209 P.2d 808]; *Rothstein* v. *Janss Inv. Corp.,* 45 Cal.App.2d 64 [113 P.2d 465]; note, 29 So.Cal.L. Rev. 378.) Full disclosure of all material facts must be made whenever fair conduct demands it (Prosser on Torts, p. 535.) *Watt* v. *Patterson, supra,* is not contrary. In that case, the vendor of realty was also unaware that certain O.P.A. rent ceilings and zoning ordinances prevented the anticipated use of the property.

However, although the complaint may satisfactorily allege the commission by Acker of a fraud upon the Dunitzes, his vendees, plaintiffs are strangers to that transaction. ■ A person uttering misrepresentations is liable only to those in whom he intended to induce reliance and who do rely in the manner intended. (Civ. Code, § 1709; *Gagne* v. *Bertran,* 43 Cal.2d 481, 488 [275 P.2d 15]; *Gonsalves* v. *Hodgson, supra,* p. 100; *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 422 [159 P.2d 958]; *Estate of Newhall,* 190 Cal. 709, 718 [214 P. 231, 28 A.L.R. 778]; *Work* v. *Campbell,* 164 Cal. 343, 347 [128 P. 943, 43 L.R.A.N.S. 581]; *Carlson* v. *Murphy,* 8 Cal. App.2d 607, 609-612 [47 P.2d 1100]; Fraud, 37 C.J.S. § 60b, p. 344; Rest., Torts, § 531.) ■ Even though the misrepresentation has been made directly to the plaintiff, if the facts clearly indicate that the defendant when making such misstatements had no intention of inducing reliance by his listener, there is no actionable fraud even though the hearer in fact relies to his detriment. (*Carlson* v. *Murphy, supra.*) ■ Of course, however, where the statements are directed to the plaintiff under circumstances which do not negative an intent by the speaker to induce reliance, such intent will be supplied by law. (*Boas* v. *Bank of America,* 51 Cal.App. 2d 592, 598 [125 P.2d 620].) ■ On the other hand, even though defendant's misrepresentations are not made directly to and in the presence of the plaintiff, it is sufficient that defendant intended his statements to reach the ears of plaintiff and that he meant that plaintiff should rely thereon. (*Amer-*

*ican Trust Co.* v. *California etc. Ins. Co.,* 15 Cal.2d 42, 66 [98 P.2d 497]; *Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184, 188 [25 P.2d 839, 91 A.L.R. 1357]; *Nathanson* v. *Murphy,* 132 Cal.App.2d 363, 368 [282 P.2d 174]; *Wice* v. *Schilling,* 124 Cal.App.2d 735, 745 [269 P.2d 231]; *Strutzel* v. *Williams,* 109 Cal.App.2d 512, 515 [240 P.2d 988].)

 Applying these rules to the instant complaint, did Acker intend to induce either action or nonaction by appellants when he failed to disclose to his vendees, the Dunitzes, the fact that the basement apartments were constructed without sanction of a building permit and violated numerous provisions of the Health and Safety Code? He certainly did not. Acker had no dealings whatsoever with plaintiffs; he had no suspicion that they existed. It was the Dunitz' lucre which caught Acker's eye when he sold the property to them in 1944. The complaint makes the gratuitous assertion that in failing to disclose the defects Acker intended to defraud the Dunitzes and "anyone else who thereafter be the transferee of said property." What interest could Acker have had in subsequent vendees? He made his profit when he sold the property and parted title therewith. Reliance or lack of reliance by a subsequent grantee could not have interested him. Neither the law of this state nor authority from other jurisdictions suggests relief to a subsequent grantee of property upon the latter's complaint that a fraud had been perpetrated by defendant upon one such grantee's predecessors in title. (*Nearpark Realty Corp.* v. *City Investing Co.* 112 N.Y.S.2d 816; *Abel* v. *Paterno,* 245 App.Div. 285 [281 N.Y.S. 58, 65]; *DeTienne* v. *Peters,* 354 Mo. 166 [188 S.W.2d 954]; *Puffer* v. *Welch,* 144 Wis. 506 [129 N.W. 525, 527, Ann.Cas. 1912A 1120]; Fraud, 37 C.J.S., § 60b, p. 345; and see *Butterfield* v. *Barber,* 20 R.I. 99 [37 A. 532].) Of course, this result presupposes the absence of any assignment of the cause of action itself. (*Nearpark Realty Corp.* v. *City Investing Co., supra.*) An early California case reached the same result by holding that a cause of action for fraud is personal and does not run with the land. (*Lawrence* v. *Montgomery,* 37 Cal. 183.) Other local decisions, although not dealing with the identical problem of a misrepresentation made by a prior vendor, indicate that one cannot predicate an action in fraud upon a deceit perpetrated on another even though the victim is the plaintiff's assignor. (*Whitaker* v. *Title Ins. & Trust Co.,* 186 Cal. 432, 436 [199 P. 528]; *Cobb* v. *Lane,* 122 Cal.App. 654, 657 [10 P.2d 528].)

Appellants seek to avoid application of the unquestioned rule that a defendant in an action for deceit must have intended to induce reliance by the plaintiff by relying upon Civil Code, section 1711. That section reads: "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Appellant contends that the complaint indicates and alleges that Acker intended to defraud a "class"; namely, subsequent transferees of the property. ▪▪▪ However, considering the code section in the light of established rules of the law of deceit, it is apparent that the Legislature intended merely to grant relief to those relying upon statements in advertisements or communicated by means of other mass media. In other words, statements which the speaker or writer intends to reach a considerable number of persons and cause reliance by a class or the public. For example, where statements that a drug is harmless are published in a medical journal (*Wennerholm* v. *Stanford University School of Medicine*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]), or where the claims of the merits of certain stock are published in a newspaper for the edification of a class of investors (*Holloway* v. *Forsyth*, 226 Mass. 358 [115 N.E. 483]), or where information is furnished to a credit agency with the expectation that it will be furnished in turn to potential creditors (*Tindle* v. *Birkett*, 171 N.Y. 520 [64 N.E. 210, 89 Am.St.Rep. 822]), or where a manufacturer advertises his goods to possible consumers (*Baxter* v. *Ford Motor Co.*, 168 Wash. 456 [12 P.2d 409, 88 A.L.R. 521]; Prosser on Torts, p. 540): in all such situations, the fraudulent party actually intended to induce reliance in those who relied although he may have been ignorant of their identity at the time of making the actionable statements. Any contention that every misrepresentation is a fraud upon the "public" and thus the misrepresenter is "deemed to have intended to defraud" the public is unavailing. If the code section were interpreted so broadly, it would wholly destroy the element of actionable deceit that the defendant must have intended to defraud the plaintiff. Such contention is utterly without support in the law. (*Gagne* v. *Bertran*, 43 Cal.2d 481 [275 P.2d 15], and other cases cited, *supra*.)

Appellant cites *Gill* v. *Johnson*, 125 Cal.App. 296 [13 P.2d 857, 14 P.2d 1017], which at first blush seems to support his

proposition. It was there held in determining what parties were necessary in an action to recover from the Torrens title insurance fund that a prior owner of property who fraudulently gains registration of that property under the Torrens system is liable in fraud to a successor in title of his immediate grantee. That decision is distinguishable. In the first place, the fraud there went to the very existence of any title whatsoever in the property sold, as a result of which the fraud permeated and invalidated the very document of title which was certain to be relied upon by subsequent purchasers of the property. Closely analogous precedents are those where misrepresentations are embodied in documents of title which must eventually reach and affect subsequent takers of the property represented by the document, such as a negotiable instrument (*National Shawmut Bank of Boston* v. *Johnson,* 317 Mass. 485 [58 N.E.2d 849]), a bill of lading *National Bank of Savannah* v. *Kershaw Oil Mill,* 202 F. 90 [120 C.C.A. 362]), a deed (*Baker* v. *Hallam,* 103 Iowa 43 [72 N.W. 419]), or a stock certificate (*Bruff* v. *Mali,* 36 N.Y. 200). In the second place, the Torrens Land Transfer Act expressly provided that in an action against the title assurance fund the original fraudulent party should be joined and, impliedly, that the state would then have a right against that party. The liability of the defrauding party would then be expressly statutory and in a limited situation.

Therefore, the order sustaining the demurrer is correct.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.