**VEREINS–UND WESTBANK AG, and Rockwood Insurance Company, Plaintiffs,**

v.

**Jeffrey E. CARTER, J.E. Carter Energy & Development Corporation, Pettet Energy Corporation, Pettet 1984 Acquisition and Development Program, W. Austin Barsalou, Barsalou and Associates, P.C., Defendants.**

No. 86 Civ. 0930 (WK).

United States District Court, S.D. New York.

July 7, 1986.

Ronald H. Alenstein, Shea & Gould and William Brennan, Phillips, Lytle, Hitchcock, Blaine & Hubber, New York City, for plaintiffs.

James A. Moss, Herrick & Feinstein, Jeffrey C. Carter, Henderson & Koplik and Jay G. Safer, LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Plaintiff Vereins-Und Westbank AG ("Vereinwest") is a German bank. Plaintiff Rockwood Insurance Company ("Rockwood") has its principal place of business in Pennsylvania. They sue the defendants for alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and for state law fraud, negligence, and professional malpractice in connection with their agreement to make several million dollars worth of loans to parties which have defaulted.

Two groups of defendants move to dismiss the complaint. The first group (the "Carter defendants") consists of four defendants: a limited partnership (Pettet 1984 Acquisition and Development Program ("Pettet 1984")), the general partner of Pettet 1984 (Pettet Energy Corporation), ("PEC") a Texas corporation (J.E. Carter Energy & Development Corporation ("Carter Energy")), and the president and sole shareholder of PEC and Carter Energy (Jeffrey E. Carter ("Carter")). The second group (the "attorney defendants") consists of an attorney (W. Austin Barsalou) and his law firm (Barsalou & Associates, P.C.) which acted as counsel to the first group of defendants. Also named as a defendant is Interdiscount, Ltd. ("IDL"), which has not joined in these motions.

The complaint alleges that in December, 1984, Carter and Carter Energy formed with the assistance of the attorney defendants four limited partnerships with the aim of discovering and exploiting oil and gas resources. Pettet 1984 was one of those partnerships; the other three—Hardin 1984, Arriola 1984, and Splendora 1984— have filed for bankruptcy.[1] Carter and Carter Energy also formed other, unidentified limited partnerships at or about the same time.

The partnerships' private placement memoranda required limited partners to pay their capital contributions in the form of a 20 percent cash down payment and a promissory note representing the remaining 80 percent. Plaintiffs allege that defendants falsely represented that the cash down payments had been made when in fact they had not been and never were, and that had they known the truth they would not have entered into the subject transactions.

The misrepresentations are said to have been contained in certificates of limited partnership filed with the Texas Secretary of State which indicated that the limited partners had made the required 20 percent cash down payments, and as well in doc-

---

1. These three partnerships are named as coconspirators in the complaint.

uments sent to plaintiffs in the course of the limited partnerships' efforts to obtain financing. These included the private placement memoranda which indicated that limited partners would make a 20 percent cash down payment, note pledge agreements, the Texas certificates of limited partnership, and opinion letters from the attorney defendants indicating that the cash down payments had been made. Plaintiffs relied on these materials in providing financing.

Financing was arranged in the following way. The Partnerships first negotiated the issuance to their limited partners of surety bonds from Rockwood which guaranteed the promissory notes made by the limited partners. They also arranged to borrow from defendant IDL up to $3.2 million each. IDL turned these loans over to Vereinwest, which actually advanced the funds. The partnership materials state that a lending bank would succeed IDL as lender and advance the required funds; plaintiffs claim that, at the time the loans were being negotiated, the Carter defendants knew that that bank would be Vereinwest.

The loans were evidenced by partnership notes executed by each limited partnership. As collateral for the loans, the partnerships executed note pledge agreements by which they pledged to IDL the promissory notes made by the limited partners and secured by Rockwood's bonds. The note pledge agreements, which were prepared by the attorney defendants, represent that the limited partners had in fact made their 20 percent cash down payments.

Shortly after receiving the loans, the partnerships defaulted. Three of them declared bankruptcy.

Plaintiffs allege that defendants either deliberately made misrepresentations or failed to exercise the requisite degree of care necessary to establish the truth or falsity of the information they provided to plaintiffs. Plaintiffs assert that had they known that the limited partners had not in fact made the required cash down pay-

ments, they would not have issued the loans and surety bonds.

Plaintiffs also assert claims under RICO, identifying the named limited partnerships and defendants as an enterprise which engaged in a pattern of racketeering activity to defraud plaintiffs and unnamed others.

## DISCUSSION

*Rule 9(b)*

 We do not agree that, as to the Carter defendants, the complaint fails to plead fraud with specificity. Paragraph 20 of the complaint alleges that all defendants together conspired to exact funds fraudulently from the plaintiffs. It identifies the alleged misrepresentations, the documents in which they were contained, and the two month period in which they were made. In light of the Carter defendants' intimate involvement in the formation and operation of the limited partnerships, we think the complaint sufficient despite its failure to pinpoint which among the four of them was the speaker or mailer on any given occasion. The complaint further states that the defendants knew the statements were false, and that plaintiffs would not have made the loans had they known of the falsity. These allegations provide more than fair notice of the claims which must be refuted.

 As to the attorney defendants, we find that the complaint sufficiently alleges that they participated in preparing the documents containing the false representations. However, nowhere is it specifically claimed that the attorneys *knew* the statements to be false; while such allegations are readily made and inferable as to the Carter defendants, who must have known whether or not the limited partners had made their payments, the same cannot be said of the attorneys, who, according to the complaint, acted only at the Carter defendants' behest. We therefore conclude that the inference plaintiffs would have us draw as to the attorneys' knowledge is too tenuous to support the complaint as to them. However, as plaintiffs indicated at oral ar-

gument that facts did exist which more strongly support the inference that they knew the relevant statements were false, we grant them leave to replead their fraud claims against the attorneys to allege them.

The Carter defendants also argue that Vereinwest lacks standing to sue for fraud because IDL did not assign to it its cause of action for fraud or deceit. Vereinwest does not sue as IDL's assignee, but on the basis of misrepresentations made directly to it or intended for its ears. *See Peerless Mills, Inc. v. AT&T* (2d Cir.1975) 527 F.2d 445, 450 (third party may sue for fraudulent misrepresentation if he relied upon it and defendants intended that it be conveyed to him).[2]

■ The Carter defendants finally argue that their alleged misrepresentations are immaterial as a matter of law. We find plaintiffs' assertion that they would not have loaned several million dollars to the partnerships had they known of the limited partners' failure to make their cash down payments more than adequate to establish materiality.

## RICO

### Section 1962(a)

■ Plaintiffs allege violations of 18 U.S.C. § 1962(a), (b), (c), and (d). Defendants argue that in order to state a cause of action for violation of § 1962(a), plaintiffs must allege facts showing that they have been injured by the acts there specifically forbidden, namely, from the investment of income derived from racketeering in an enterprise engaged in interstate commerce. They cite our recent decision in *DeMuro v. E.F. Hutton* (Jan. 13, 1986) Docket No. 85 Civ. 7097, where we so interpreted the language of § 1964(c)—affording a civil remedy for violations of the statute—and § 1962(a). We agree that *DeMuro* con-

trols. As plaintiffs have not pled facts meeting the requirements there set forth, we dismiss the § 1962(a) claim with leave to replead to set forth facts which would.

### Pattern of Racketeering Activity

Plaintiffs must prove that they were injured by reason of defendants' conduct of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1964(c). This requires that *at least* two acts of racketeering activity have been committed within ten years of each other. The question presented, of course, is what additional requirements are suggested by use of the expression "at least".

*In Sedima S.P.R.L. v. Imrex Co.* (1985) — U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed. 2d 346, the Supreme Court stated that the key to the pattern requirement was continuity and relationship between the acts alleged. Subsequent decisions have construed this footnote to mean that the pattern requirement is not satisfied by allegations of two or more related acts implemented to carry out one isolated and unlawful transaction because the requisite continuity of illegal activity is missing. *Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc.* (N.D.Ill. 1985) 615 F.Supp. 828 (no pattern where there is a "single fraudulent effort, implemented by several fraudulent acts" and claims alleging two mailings in furtherance of construction kickback scheme dismissed); *Soper v. Simmons, et al.* (S.D.N.Y.1986) 632 F.Supp. 244 and cases there cited (ministerial acts undertaken to deprive plaintiffs of commission do not form pattern).

■ We agree with the view expressed in these cases and do not believe that the complaint as it now stands sufficiently meets the standards there set forth. While each plaintiff provided financing for

---

**2.** The cases cited by defendants do not support its position. *See Nearpark Realty Corp. v. City Investing Co.* (S.Ct.N.C.Co.1952) 112 N.Y.S.2d 816 (corporation which had no existence at time misstatements made to its predecessor has no standing to sue for fraud); *Abel v. Paterno,* (1st Dept.1913) 245 App.Div. 285, 281 N.Y.S. 58; *Fox v. Hirschfield,* 157 App.Div. 364, 142 N.Y.S. 261 (husband who conveyed contract to wife lacks standing to sue for fraud in inducement). (subsequent purchasers of stock in cooperative apartments lack standing to sue based upon misrepresentations made to original purchasers).

several partnerships, it appears that this was done as a "package" such that the actions taken to realize it lack the characteristic of continuity. However, as plaintiffs' counsel suggested facts at oral argument which might cure this situation, we grant them leave to replead specifically to set forth such facts.[3]

As for the specificity of pleading contained in the RICO claims, we find our discussion of the Rule 9(b) arguments dispositive and grant plaintiffs leave to replead the allegations as to the attorney defendants.

### Negligent Misrepresentation

The Carter defendants (but not the attorney defendants) move to dismiss the negligent misrepresentation claim on the ground that they were not in privity or a privity-like relationship with plaintiffs and thus owed them no duty of care.

The question of what constitutes a relationship in which a party owes a duty of care to another has arisen most frequently in cases involving the liability of accountants for misinformation in reports prepared by them on which others, with whom they had no contractual relationship, have relied to their detriment. *See Credit Alliance v. Arthur Andersen & Co.* (1985) 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110; *Ultramares Corp. v. Touche* (1931) 255 N.Y. 170, 174 N.E. 441. The accountant has not been charged with such a duty where it had not directly transmitted the misinformation to the plaintiffs, and where it did not know to whom its reports would be shown or the transactions in which they would be used. *Ultramares, supra.* Nor is there a duty of care where the report is intended for the client's convenience and could only be expected to be shown to another as an incidental or collateral consequence of its primary purpose. *Credit Alliance, supra.*

Where, however, the plaintiff's use of a report is the "end and aim" of the transaction, where the preparer has sent a copy of its findings to plaintiff "for the very purpose of inducing action," and where it knew that on the faith of its report action would be taken, a duty of care exists. *Glanzer v. Shepard* (1922) 233 N.Y. 236, 238, 135 N.E. 275 (duty by public weighers to buyers of weighed products to prepare accurate reports). Similarly, where the accountants knew the identity of the third party bank which would be relying on its audit reports, were in direct oral and written communication with it, and met with it to discuss value of its client's assets, the relationship was the practical equivalent of privity. *European American Bank v. Strauhs & Kay* (1985) 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110.

As to Rockwood, there is no question that the standard for a privity-like relationship has been met as the Carter defendants allegedly negotiated with and made representations directly to it on which it was intended to rely.

As to Vereinwest, who was separated from the defendants by virtue of IDL's intermediary role, the relationship is not as strong but we find it sufficient. The partnership materials stated that IDL would be succeeded by a lending bank; it is claimed that defendants knew that bank would be Vereinwest. This situation is more akin to those presented in *Glanzer, supra,* and *European American Bank, supra,* in which the identity of the non-privy party was known and transmission of the conveyed reports was "for the very purpose of inducing action," *Glanzer, id.* at 238, 135 N.E. 275, than to the cases in which no duty of care was found. We accordingly deny defendants' motion.

### Personal Jurisdiction

Jeffrey Carter argues that his actions are protected by the corporate shield doctrine, and the attorney defendants argue that their contacts with New York were insufficient to support *in personam* juris-

---

**3.** The fact that plaintiffs' counsel do not represent the other entities they allege were involved in or victim to the alleged racketeering activity does not preclude them from pleading their identity and injury in the complaint.

diction over them. They, and plaintiffs, have submitted affidavits containing factual allegations in support of their positions.

These arguments are relevant only if we dismiss the federal cause of action. As we have given plaintiffs leave to replead the RICO claims, we will withhold decision as to personal jurisdiction. In the event we do not sustain the amended RICO claims, we will refer the motions to a magistrate to take evidence and to issue a recommendation as to the proper disposition.

*Venue*

All defendants argue that venue is improperly laid in this district. We agree that the complaint does not adequately allege that the cause of action arose here. The materials submitted in support of plaintiffs' papers on this motion, however, suggest that venue is indeed proper, and we grant them leave to incorporate relevant information into the amended pleading they will submit.

In sum, we dismiss the common law fraud and RICO claims as to the attorney defendants with leave to replead, dismiss the claims brought under RICO with leave to replead, and grant plaintiffs leave to replead as to venue. The motions are otherwise denied.

SO ORDERED.