DOROTHEA K. MATTHEWS, Respondent-Appellant, *v.* JOSEPH SCHUSHEIM et al., Appellants-Respondents, et al., Defendants.

Second Department, July 16, 1973.

*Fuchsberg & Fuchsberg* and *Ward R. Burns* (*Jacob D. Fuchsberg* and *Irving Lemov* of counsel), for appellants-respondents.

*Anderman, Povman & Warren* (*Arthur A. Anderman* of counsel), for respondent-appellant.

*Per Curiam.* The principal issue on this appeal is whether the financial misrepresentations of the defendant Mark Matthews, the plaintiff's former husband, were a substantial factor in causing the plaintiff to execute a separation agreement dated October 16, 1950. In other words, did the plaintiff rely on this defendant's misrepresentations as a matter of fact? In our opinion, the plaintiff did not rely upon these financial misrepresentations. A second and equally important issue is whether, in view of the fact that all necessaries were provided for the children by either the separation agreement or by other provisions for the children made by this defendant, the plaintiff personally incurred any damages by accepting child support payments which were allegedly too low in light of this defendant's true income in 1950. In our opinion, the plaintiff has suffered no actionable damages.

We have before us two lawsuits which were consolidated by an order dated May 17, 1962. Action No. 1, commenced on May 15, 1959, consisted of two causes of action. The first cause was for fraud against Mark Matthews and the second was against the same defendant and his brother, Joseph Schusheim, for damages resulting from an alleged conspiracy to defraud the plaintiff. During the pendency of Action No. 1 and following an examination before trial of defendant Joseph Schusheim in connection with the second cause of action, the plaintiff, on October 12, 1960, commenced Action No. 2. The second suit consisted of three causes of action. The first cause reiterated the claim that defendant Mark Matthews had made fraudulent representations as to his financial condition to induce the plaintiff to accept the support provisions in a separation agreement. The second cause alleged a conspiracy to defraud the plaintiff by all of the other named individual defendants, including Mark Matthews' brother, sister and other relatives, as well as the manager of his business and his accountant; and the third cause was in the nature of a creditor's action under the Debtor and Creditor Law for arrears in support payments due under the aforesaid separation agreement since January 1, 1960.

The relief sought by the plaintiff in the consolidated action was: (1) modification of the separation agreement and an Alabama divorce decree so as to provide for alimony and support based upon defendant Mark Matthews' net worth, in an amount that the plaintiff would have received had the agree-

ment not been induced by fraud; (2) damages measured by the difference between what the plaintiff has received under the agreement and the amount she would have received had the agreement not been induced by fraud; (3) damages against all the defendants, except the corporate defendant, in the sum of $250,000; (4) recovery of arrears due under the separation agreement since January 1, 1960; and (5) the setting aside of allegedly fraudulent conveyances (including Mark Matthews' interest in Rapid Messenger Service), plus an accounting.

The pertinent background facts are as follows: The plaintiff and defendant Mark Matthews [hereinafter referred to as the defendant] were married in New York in 1936 and had three children. They separated in September, 1946 and executed a written separation agreement, dated September 9, 1946, providing for alimony and child support in the amount of $900 per month. Thereafter, the defendant went to California. When payments under the agreement were not forthcoming, the plaintiff commenced an action for separation. Her husband counterclaimed for divorce on the ground of adultery. The counterclaim was tried first (January, 1948) and resulted in a decision in favor of the defendant (CUFF, J.). Findings of fact and conclusions of law were signed on March 1, 1948 and an interlocutory decree was entered. The plaintiff took an appeal, but, before perfecting it and before the interlocutory decree became final, she moved for and was granted leave to file a supplemental reply to the counterclaim, alleging an affirmative defense of adultery on the defendant's part with one Winifred Fielding, whom he later married (HOOLEY, J.). A trial on the issue of the defendant's adultery was held in October, 1949 and, upon the evidence presented, the trial resulted in a finding in the defendant's favor. The interlocutory decree entered upon the counterclaim was then reinstated (STODDART, J.).

In January, 1950, prior to the reinstated interlocutory decree becoming final, the plaintiff moved to vacate it and for leave to interpose a supplemental reply to the counterclaim, alleging as an affirmative defense a new act of adultery with Miss Fielding subsequent to reinstatement of the decree. The plaintiff's motion papers alleged perjury at the October, 1949 trial by Miss Fielding and supposedly set forth photographic and eyewitness evidence of a new act of adultery. The Special Term (STODDART, J.) granted the motion in February, 1950, vacated the interlocutory decree, granted the plaintiff leave to serve a new supplemental reply and restored the action to the trial calendar.

The trial was subsequently adjourned to the October, 1950 Term. In the interim, newspaper coverage of the parties' marital discord intensified by reason of the indictment, on July 18, 1950, of the plaintiff's alleged paramour for shooting his wife when the latter led an early morning raid, on July 10, 1950, on a cabin in upstate New York. The cabin was allegedly being shared by the plaintiff and the victim's husband. This incident also led to an order, in August, 1950, which deprived the plaintiff of custody of the three children and visitation rights.

The subject separation agreement, which was consummated on October 16, 1950 with the help of Mr. Justice Hooley, provided, *inter alia,* that the plaintiff have custody of the children; that she transfer to the defendant the marital residence, which had been held in her name alone; that the defendant pay to the plaintiff the sum of $250 per month for her support, to be reduced to $100 per month when the youngest child would reach 18 years of age; and that the defendant pay to the plaintiff the sum of $100 per month per child, as child support, until the particular child would reach 18, or marry or attend college. The agreement was incorporated into the Alabama divorce decree, which was secured by the plaintiff the following month.

In 1958, the plaintiff instituted a proceeding in the Children's Court, Nassau County, to increase the amount of child support. She was successful in securing a total award of $750 per month for the support of two of the three children. Presumably as a result of limited financial disclosures by the defendant in that proceeding, the plaintiff instituted the instant Action No. 1 the next year.

In its opinion, which runs to more than 40 pages, the trial court (Suozzi, J.) found that the plaintiff had sustained her burden of proof as to the defendant's knowingly false misrepresentations and her own reliance thereon. However, it found that only limited damages had been established, namely, the plaintiff's loss of the marital residence and her consent to a monthly allowance of only $100 for each of the three children. The plaintiff's consent to a monthly allowance of only $250 for her own support was not thought to give rise to any damages, since the earlier finding of adultery against her had made any claim to alimony totally untenable. The award for her lost equity in the residence amounted to $20,000, plus some $26,000 in interest from October 16, 1950 to December 1, 1971. The award for lost child support consisted of an additional $225 per month for each child from June, 1951 until each of the children would attain the age of 18 or until November 1, 1959,

the effective date of the Children's Court order. Together with interest, this amounted to about $123,000. In addition, the plaintiff won an identical recovery against the other appellants, who had participated in the fraud, and another sum of about $25,000 from defendant Mark Matthews, representing support arrears and interest.

The proof as to three elements of fraud is overwhelming. Thus, there is no doubt that the defendant made false representations to the plaintiff, concerning his financial affairs. The evidence with respect to this part of the case was reviewed in detail by the Trial Justice and we affirm his findings to the extent indicated herein.

We differ with the Trial Justice on the remaining elements of fraud, i.e., reliance and damages, and find that the plaintiff did not rely upon the representations made to her. The representations, we conclude, were not a substantial factor, so far as the plaintiff was concerned, in causing her to execute the separation agreement of October 16, 1950. We also conclude that the plaintiff has failed to prove any actionable damages.

As is stated in 2 N Y P J I 688: "Reliance is to fraud what proximate cause is to negligence; that is to say, fraud and injury must bear the relation of cause and effect, Brackett v Griswold, 112 NY 454, 20 NE 376; Restatement, Torts § 546. It is not necessary that the representation have been the exclusive cause of plaintiff's action or non-action; it is sufficient that but for the representation plaintiff would not have acted or refrained from acting, that is, that the representation was a substantial factor in inducing him to act or refrain from acting, State Street Trust Co. v Ernst, 278 NY 104, 15 NE 2d 416; Ochs v Woods, 221 NY 335, 117 NE 305; Strong v Strong, 102 NY 69, 5 NE 799; Addington v Allen, 11 Wend 374; Abel v Paterno, 245 App Div 285, 281 NYS 58; Restatement, Torts § 546."

Applying these principles, the plaintiff has failed to prove that the defendant's representations were a substantial factor in inducing her to sign the separation agreement of October 16, 1950.

The most damaging proof of nonreliance was given by the plaintiff herself when she testified in the Children's Court in 1958. At that point, the instant actions had not been commenced. The plaintiff declared, under oath, that the support provisions in the 1950 agreement were not fixed upon her husband's ability to pay.

Well before 1958 the plaintiff made sworn statements indicating that she was well aware of the defendant's true

means. Thus, in the separation action brought by the plaintiff against her husband in 1946 the plaintiff claimed that her husband earned $50,000 per year and was worth $250,000. (That action was discontinued when the parties reconciled.) After the reconciliation a further dispute arose and the separation agreement dated September 9, 1946 was entered into. That agreement provided for $900 per month support for the plaintiff and the children; and the plaintiff was to receive, in addition, one of the couple's two homes in New York. Shortly thereafter, the plaintiff brought an action to set aside this separation agreement, alleging frauds similar to those alleged here. In an affidavit filed in that action and dated February 27, 1947, the plaintiff alleged that the defendant had represented to her that he earned no more than $10,000 to $13,000 per annum from his business and other assets. She further averred: "My investigation since then has disclosed that my husband has for a long time been and is now earning upward of $50,000 per annum from his many business ventures and investments." Interestingly, that affidavit goes on to allege one of the frauds sought to be recovered for in this very action: "I will establish *by competent corroborated proof* that this sale of the Rapid Messenger Service here in New York never existed, is a pure fiction and an attempt by the defendant to appear to this court as a man without substantial assets. I will show at the trial of this action that defendant arranged this purported sale through correspondence with his brother and sister and other members of his family, and that the defendant is still now the owner of that business and still earns therefrom upwards of $50,000 annually" (emphasis supplied). In June, 1948 the plaintiff claimed that the defendant's worth had increased to $500,000.

It cannot be said, in the light of the above, that the plaintiff had no duty to inquire further into her husband's finances or that such an inquiry would have proved futile. The record indicates that Mr. Justice CUFF ordered an examination of the defendant's affairs for the very purpose of ascertaining his earnings in 1949 and for the first quarter of 1950. The report, by Edmund F. Bowen, C. P. A., indicates that the books and records of the Rapid Messenger Service and related companies were fully disclosed. The report indicated that defendant's net earnings for 1949 were approximately $27,500 and, in addition, included the Federal tax figures for 1942 through 1949, inclusive. The report is dated May 31, 1950, prior to the execution of the separation agreement at bar.

Mr. Naiman, the defendant's attorney, called as a witness by the plaintiff, testified that disclosure of the defendant's finances was not asked for and was not given.

Taken together, these facts are compelling evidence that the plaintiff's estimate of the defendant's resources, even if exaggerated, had some basis in facts actually known to her and that the amounts did not figure prominently, if at all, in the settlement. What, then, induced the plaintiff to settle if the amount of the settlement was not a factor?

The plaintiff was burdened with the finding of adultery against her. Under these circumstances, an award of alimony was extremely unlikely (*Robinson* v. *Robinson,* 146 App. Div. 533; *Edwards* v. *Edwards,* 155 App. Div. 904; see, also, Domestic Relations Law, § 236; *Math* v. *Math,* 39 A D 2d 583, affd. 31 N Y 2d 693). The defendant had been exonerated of any sexual misconduct.

In addition, the plaintiff had been deprived of the custody of her children and visitation with them because of the up-State cabin incident where a life had been taken. While the plaintiff may have been able to regain custody, her efforts in this regard were necessarily riddled with uncertainty. Absent an award of custody and with the prospect of no alimony as well, the defendant would not have been required to make any payments to the plaintiff or to disclose his finances. Thus, it is plain that the motivation behind the settlement was to obtain custody of the children, child support and alimony on the best terms possible. Since the plaintiff could not have received any financial benefits without a settlement, the financial terms of the settlement were incidental to the settlement, so long as they were adequate. Under these circumstances, the defendant was not even required to disclose his finances (*Riemer* v. *Riemer,* 31 A D 2d 482, affd. 31 N Y 2d 881).

We entertain no doubts that the settlement was fair when made. Its terms have already been stated. The agreement itself recites that each of the terms of the settlement was discussed separately and at length and " are believed by the parties hereto and their attorneys and by the said Hon. FRANCIS G. HOOLEY, Justice, to be fair and adequate to both of the parties and are believed sufficient and provident to furnish necessary support and maintenance by the Husband for the Wife and the infant children of the marriage." The agreement also states that " the wife herein is accepting the terms and conditions of this Agreement after advice and counsel with her attorney and conference with the said Justice, based upon the belief that

the terms and conditions of the Agreement are fair, adequate, equitable and provident, *and for no other reasons* '' (emphasis supplied).

Turning now to the issue of damages, we first dispense with the element of lost alimony. The trial court held that the plaintiff had not suffered any damages for lost alimony because her misconduct would likely have barred her from any court-awarded alimony. As noted earlier, we agree with the trial court on this point. More importantly, this issue is not properly before us, since the plaintiff cross-appealed from only that portion of the judgment which denied her certain counsel fees and punitive damages.

The trial court did, however, award the plaintiff substantial damages for lost or inadequate child support between the date the separation agreement was executed and the date the amount of child support was increased to $375 per month per child by the Children's Court.

The plaintiff contended before the trial court that, because she did not obtain the $375 per month for each of the children and did not have control of this $375 per month per child during the period for which she claims the defendant was liable, she is now, long after the children have become fully emancipated, entitled to obtain *for herself* a judgment for all the sums for which she believes the separation agreement would have made provision had the full facts of the defendant's net worth been known to the parties at the time they negotiated the agreement in 1950. It is, of course, abundantly clear that this is a *non sequitur*. The defendant had been adjudged as entitled to the custody of the children. To obtain support for the children, the plaintiff would first have had to obtain custody of them. Had the plaintiff been unwilling to accept the settlement, the defendant could well have insisted upon his rights to retain custody of the children and to make his own provisions for them. He could also have insisted that the finding of the plaintiff's infidelity stand, pursuant to which the latter personally was entitled to no moneys at all, by refusing to settle. To hold, therefore, that the damages flowing from the failure of truthful disclosure of the defendant's net worth and assets would have placed a larger sum into the separation agreement for child support is not alone a mere speculation, but a speculation which challenges the realities of the situation.

No evidence was offered to prove that the children were deprived of necessaries and that the plaintiff or some third party had to provide them (see *De Brauwere* v. *De Brauwere*,

203 N. Y. 460, 463; *Langerman* v. *Langerman,* 303 N. Y. 465, 469). In point of fact, the record is abundantly clear that the children's support was not limited to the sums provided for in the separation agreement. On the contrary, the record indicates that the defendant made voluntary payments to his children, in addition to those fixed under the separation agreement, even as increased by the Children's Court.

The relations between the children and their father were close. After the oldest child graduated from high school in 1953, he stayed with his father in Florida for six months. One of the girls lived with her father for six months. No reduction of payments to the plaintiff was made. In 1958, the defendant created trusts amounting to over $100,000 for the children, providing that they receive the income therefrom during their minorities, with power to apply the principal as may be necessary for their needs. The children stayed with their father during Easter and the Christmas-New Year periods and he provided for their college education at a cost of about $2,500 per year for each child. It is clear, therefore, that the defendant had no desire to short-change his children, but merely to prevent this plaintiff from obtaining vicarious control of any sums other than those essential to the necessaries of the children.

We know of no decision which would entitle the wife to recover for her own benefit underpayments for child support, predicated upon the economic worth of the husband, where there is no showing that she had, in fact, been required to expend money for their necessaries; and in such event the measure of damages would be such sums so expended. The failure of a father to provide opulently for the children when he has the means to do so certainly does not occasion a cause of action for the benefit of the mother if their reasonable necessaries have been provided for. It is not contended, nor did the trial court hold, that such necessaries were not made available here.

Certainly, there is no authority which says that a wife, not entitled to alimony in her own right, can obtain it vicariously. The plaintiff's theory on this point is as follows: If the husband had provided more money, even though he provided all that was necessary, she would have had control over such funds, thereby enhancing the general life style of the family. Since she has been wrongfully denied these additional funds in the past, she is now entitled to be made whole by a lump sum judgment for her own personal use and benefit. No authority is cited for such a bizarre theory, as, indeed, no court has ever arrived at such a

result. In any case, the plaintiff did apply for additional child support and she did receive such additional child support.

We pass over the question of damages with respect to the house. The plaintiff does not seek to disaffirm the separation agreement but, rather, seeks to enforce it by way of damages for fraud. It is obviously improper to permit her to retain the fruits and benefits of the agreement and then return to her the consideration she had given therefor, such as the return to her of the house.

We have considered the remaining arguments raised and find them to be without merit.

Accordingly, the judgment must be modified, on the law and the facts, so as to strike therefrom the recovery granted to the plaintiff against the appealing defendants, Mark Matthews, Theodore Schwartz and Joseph Matthews, for the alleged fraud, and to dismiss the first and second causes of action of the verified amended complaints; and, as so modified, the judgment should be affirmed insofar as appealed from, without costs.

CHRIST, J. (dissenting). In my opinion, the proof fully supports the findings that defendant Mark Matthews knowingly misrepresented his true income and net worth to induce the plaintiff to consent to the transfer of the marital residence, held in her own name, and to a monthly allowance of only $100 for each of their three children; and that the plaintiff believed and relied upon these representations in executing the separation agreement.

While it is true that well before 1950 the plaintiff made sworn statements disputing this defendant's claim to being a man of modest means, it is equally clear that her allegations were based upon little more than an estimate of past living expenses. Thereafter, he succeeded in convincing her, as well as Mr. Justice HOOLEY apparently, that the alleged failure of his California business venture and the poor prospects of his New York business prevented him from according to his children more than relatively nominal support and that he needed the marital residence, or rather the proceeds upon its sale, as a nest egg to start over again in business. The plaintiff was, of course, understandably concerned at the time about her own uncertain status, having been previously adjudicated an adulteress, but she was not claimed to be an unfit mother by this defendant and he, himself, showed some concern over the effect of another trial on his own alleged adultery. Finally, an attorney who represented this defendant in 1950, George Naiman, testified upon the trial that he thought that, were it not for the efforts of Mr. Justice HOOLEY

in asking him (defendant Mark Matthews) to stretch himself and do something more for the children, the settlement would never have been reached.

Furthermore, since there was proof that the plaintiff was forced to go to work in the early 1950's because of financial difficulties, and thus took it upon herself to support her children in a manner more commensurate with their father's true (though undisclosed) means, I have no difficulty in voting to affirm an award of damages to her, based upon the difference between the amount provided in the separation agreement for child support and the amount she would have received for this purpose by agreement or court order had her husband's true means been disclosed. Although the children have long since been emancipated, the award is consistent with our strong public policy against allowing a father to escape his obligations or to flout the law and does not constitute a total windfall to the plaintiff (see *Denberg* v. *Frischman*, 26 A D 2d 266).

LATHAM, Acting P. J., SHAPIRO, BRENNAN and BENJAMIN, JJ., concur in *Per Curiam* opinion; CHRIST, J., dissents and votes to affirm the judgment insofar as appealed from, with an opinion.

Judgment modified, on the law and the facts, by striking therefrom the first, second and third decretal paragraphs and substituting therefor a provision dismissing the first and second causes of action of the verified amended complaint as against defendants Mark Matthews, Theodore Schwartz and Joseph Matthews. As so modified, judgment affirmed insofar as appealed from, without costs.