OPINION OF THE COURT
James W. McCarthy, J.
*177 The above-referenced matters are before this court pursuant to defendant Metropolitan Life Insurance Company’s motion for summary judgment (CPLR 3212). Following the receipt of the parties’ submissions, the court reserved decision on August 9, 2004. Having reviewed the voluminous submissions of the parties, for the reasons set forth below, this court makes the following findings of fact and conclusions of law.
Findings of Fact:
The facts underlying the 23 plaintiffs’ claims against the defendant are not in dispute, and find their genesis in a claimed civil conspiracy arising out of an alleged failure of Metropolitan Life, its agents, servants and/or employees to disclose or publish information concerning the dangers of asbestos in the scientific and medical literature in the 1920s through 1930s. At the center of the plaintiffs’ claims against Metropolitan Life are three studies conducted by or on behalf of the defendant into the medical effects of exposure to asbestos.
It is alleged in the plaintiffs’ complaint that in the 1920s a study of Canadian asbestos mine workers revealed to Metropolitan Life that the workers suffered from asbestosis, and that the defendant failed to publish the information. In 1932, plaintiffs allege the defendant, through its agents, Dr. Anthony Lanza and Dr. Fellow, conducted medical examinations of employees of Johns-Manville. A report of the study demonstrated that a high percentage of employees in the study suffered from asbestosis, including those not directly involved in the manufacturing process. The study was again not published in the medical literature of the time. A third study conducted by Dr. Lanza, then Associate Medical Director of Metropolitan Life, was published in 1935. It is alleged by plaintiffs that the study was published at the behest of members of the asbestos industry to:
“affirmatively misrepresent a material fact about asbestos exposure; i.e the seriousness of disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza’s description as ‘fatal’ and through other selective editing . . . that affirmatively misrepresented asbestos[is] as a disease process less serious than it actually is and was known to be then. As a result, Dr. Lanza’s study was published in the medical literature in a misleading fashion in 1935 . . .” (plaintiffs’ complaint, count III, civil conspiracy).
These allegations, when taken together, form the basis of the *178 plaintiffs’ claims of civil conspiracy and fraud against Metropolitan Life.
In support of its motion for summary judgment, defendant points to the following facts, which are not challenged by the plaintiffs:
(1) Metropolitan Life did not and does not engage in the business of manufacturing, fabricating, designing, distributing, selling or otherwise placing in the stream of commerce asbestos or other asbestos containing products;
(2) plaintiffs do not allege that they had any contact with Metropolitan Life or its employees regarding asbestos;
(3) plaintiffs do not allege that they read or heard anything that Metropolitan Life or its employees wrote or said about asbestos; and
(4) plaintiffs do not allege the existence of a fiduciary, contractual, special or confidential relationship, or any relationship whatsoever with Metropolitan Life, its agents, servants or employees concerning asbestos.
Distilled to its essence, defendant’s motions for summary judgment are predicated first upon an argument that the plaintiffs, regardless of how their cause of action is denominated, have failed to demonstrate a recognized duty to them, and that to impose a duty or liability in the instant action would in essence “[expand] liability to an unlimited class of persons [such as plaintiffs] who were exposed to asbestos over many decades in many occupations, and who have had no relationship or connection whatsoever to Metropolitan Life.” (Defendant’s counsel’s affirmation in support of summary judgment 1Í13.) In the alternative, defendant argues that the plaintiffs have failed to demonstrate a “justifiable detrimental reliance,” insofar as the dangers associated with asbestos exposure here documented long before the plaintiffs alleged exposure and there is no proof in the record before the court of any reliance by plaintiffs. Lastly, defendant argues that plaintiffs are incapable of demonstrating “a legitimate causal nexus between the alleged acts and omissions of Metropolitan Life and their purported injuries.” (Defendant’s counsel’s affirmation in support of summary judgment If 19.)
In opposition to the instant motion, plaintiffs’ counsel first argues that:
“New York courts have long recognized a cause of action for civil conspiracy based on the underlying *179 tort of fraud. The evidence of fraud committed by Metropolitan Life is overwhelming ... A defendant who commits fraud is liable to whoever suffers the consequences of the fraudulent act, regardless of whether or not privity exists between the parties.” (Plaintiffs’ counsel’s affirmation in opposition to summary judgment 1i 4.)
Plaintiffs’ counsel further argues that:
“Defendant has also asserted that the plaintiffs [sic] claim must fail because there is no evidence of proximate causation. This argument is an insufficient basis for summary judgment as a prima facie case had been set forth in the pleadings raising a triable issue. Specifically, by concealing and misrepresenting material facts related to the toxicity of asbestos, Met Life discouraged all persons exposed to asbestos from protecting themselves from future contact. This misrepresentation prevented the general public and plaintiffs from making informed decisions about whether or not to work in an environment where asbestos was present.” (Plaintiffs’ counsel’s affirmation in opposition to summary judgment If 11.)
Conclusions of Law:
It is well settled that “[t]here is no independent tort in New York for civil conspiracy” (Niagara Mohawk Power Corp. v Testone, 272 AD2d 910, 911 [2000]; see, American Baptist Churches of Metro. N.Y. v Galloway, 271 AD2d 92, 101 [2000]). Rather, “[allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort” (Alexander & Alexander of N.Y. v Fritzen, 68 NY2d 968, 969 [1986]; Brenner v American Cyanamid Co., 288 AD2d 869 [4th Dept 2001]; see also, Burdick v Verizon Communications, 305 AD2d 1030 [4th Dept 2003]; Kjar v Jordan, 217 AD2d 981 [4th Dept 1995]; McCarthy v Weaver, 99 AD2d 652 [4th Dept 1984]). Thus, as framed by the plaintiffs in their complaint, the court turns its attention to the intentional tort of fraud.
As recognized in New York, the necessary elements of fraud are:
“the misrepresentation of a material fact; knowledge by the party making the misrepresentation. that it was false when made; justifiable reliance *180 upon the statement; and damages (Chimento Co. v Banco Popular, 208 AD2d 385; Gouldsbury v Dan’s Supreme Supermarket, 154 AD2d 509, 510-511 [1989], lv denied 75 NY2d 701; Brown v Lockwood, 76 AD2d 721, 730).” (Abrahami v UPC Constr. Co., 224 AD2d 231 [1st Dept 1996].)
At the heart of defendant’s motion for summary judgment is first an argument that plaintiffs have failed to proffer proof of “justifiable detrimental reliance” or any reliance whatsoever on the alleged affirmative misrepresentation by defendant.
It is well settled that:
“Reliance is to fraud what proximate cause is to negligence; that is to say, without reliance, there can be no recovery for fraud, Brackett v Griswold, 112 NY 454, 20 NE 376; Restatement, Second, Torts § 546; see O’Dell v Ginsberg, 253 AD2d 544, 677 NYS2d 583 (alleged misrepresentation made after contract execution); Megaris Furs, Inc. v Gimbel Bros., Inc., 172 AD2d 209, 568 NYS2d 581. It is not necessary for the representation to have been the exclusive cause of plaintiffs action or non-action; it is sufficient that but for the representation plaintiff would not have acted or refrained from acting, that is, that the representation was a substantial factor in inducing plaintiff to act or refrain from acting, State Street Trust Co. v Ernst, 278 NY 104, 15 NE2d 416; Ochs v Woods, 221 NY 335, 117 NE 305; Curíale v Peat, Marwick, Mitchell & Co., 214 AD2d 16, 630 NYS2d 996; Restatement, Second, Torts, § 546; see Arnold Constable Corp. v Chase Manhattan Mortg. & Realty Trust, 59 AD2d 666, 398 NYS2d 422; Matthews v Schusheim, 42 AD2d 217, 346 NYS2d 386, aff'd, 35 NY2d 686, 361 NYS2d 160, 319 NE2d 422 and mod 46 AD2d 794, 361 NYS2d 184 (citing PJI)” (2 NYPJI 167 [2004] [emphasis added] [“Intentional Torts — Fraud and Deceit”]).
As more fully set forth above, plaintiffs allege, in sum and substance, that had the defendant published the findings of the 1920s and 1932 studies, and not misrepresented the findings of the 1935 study, each would not have worked around asbestos. However, aside from these conclusory assertions, this court finds that the plaintiffs’ complaint and papers in opposition to the instant motion are utterly bereft of admissible evidence establishing either the awareness of the plaintiffs of the alleged misrepresentation and nondisclosure, or even if such awareness *181 was to have been established, that such reliance would have been justified.
While the parties have not cited, nor has the court’s independent research found a reported case in New York concerning the issues before it, attached to the defendant’s motion papers are 20 unreported decisions from jurisdictions finding for defendant on the issue of liability. Central to a number of the decisions cited by defendant is a finding that reliance, even if found, would not be justified in light of existing scientific literature at the time of the plaintiffs’ alleged exposure. As succinctly stated by Judge Kevin McCarthy in Caldo v Asbestos Defendants (Sup Ct, San Francisco County, Cal, Case No. 412325, Apr. 8, 2004):
“In light of the available information about the dangers of asbestos in the medical and scientific literature throughout the relevant time period, the Court finds that even if plaintiffs could show reliance, that reliance would not be justified as a matter of California Law. See, John Crane, Inc. v Wommack, 227 Ga App. 538, 540, 489 SE2d 527, 530 (1997) (affirming judgment against manufacturers of asbestos-containing products, noting that ‘reports concerning dangers ... of asbestos were published in the 1930’s’), cert, denied, 1998 Ga. LEXIS 201 (Ga. Jan. 30, 1998); see also, Borel v Fibreboard Paper Products Corp., 493 F2d 1076 (5th Cir. 1973) (landmark case involving workplace warnings and exposure to asbestos dangers, upon which decision asbestos plaintiffs frequently rely to prove their case against asbestos manufacturers and sellers), cert, denied, 419 U.S. 869 (1974); Owens-Illinois v Zenobia, 601 A2d 633, 645 (Md. 1992) (as early as 1930, some 50 articles were published in medical literature concerning asbestos risks, the literature grew to nearly 1,000 articles by I960).” (Id., see also, Tuytel, Asbestos Litigation in British Columbia: Canada’s First “Mass Toxic Tort” <http:// www.cwilson.com/pubs/insurance/njtlO/> [providing an overview of the history of the medical and scientific awareness of the dangers of asbestos as well as the governmental and regulatory response thereto], cached at <http://www.courts.state.ny.us/reporter/ webdocs/asbestos.htm>).
In short, the court finds that there is not a scintilla of evidence demonstrating reliance or, if found, that such reliance could be found, in light of the foregoing, to be justified, and, *182 insofar as the plaintiffs have failed to meet their burden of proof with respect to an essential element of their claim, grants defendant Metropolitan Life’s motion for summary judgment.