**WORLD ARROW TOURISM ENTER-PRISES, LTD., Plaintiff,**

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

**No. 82 Civ. 546 (JES).**

United States District Court, S.D. New York.

March 22, 1984.

---

Altieri, Kushner & Miuccio, New York City, for plaintiff; Alexander A. Miuccio, New York City, of counsel.

Richard E. Rieder, New York City, for defendant; Jane Winer, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiff, World Arrow Tourism Enterprises, Ltd. ("World Arrow"), commenced this action against defendant, Trans World Airlines, Inc. ("TWA"), alleging antitrust violations under sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1982).[1] Defendant has moved, pursuant to Fed.R. Civ.Pro. 12(b)(6), to dismiss plaintiff's amended complaint for failure to state a claim.[2]

1. Section 1 of the Sherman Act provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court. Section 2 of the Sherman Act provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or

## FACTS

The allegations of the amended complaint, which are presumed to be true for purposes of this motion,[3] state the following. Plaintiff, a New York corporation with its principal place of business in New York, is a travel wholesaler and travel agent engaged in the business of marketing flights to travel agents and the public. Defendant, a Delaware corporation with a place of business in New York, is a domestic air carrier. Plaintiff's business includes the packaging, production, and operation of air charter programs to Italy from the United States. Some of defendant's flights operate between points in the United States and points in Italy.

In October 1978, plaintiff and defendant entered into a contract under which TWA agreed to provide air transportation for round-trip charter flights departing from New York City, New York to Rome, Italy, commencing June 2, 1979 and weekly thereafter for a total of thirteen round-trip charter flights at a price of $72,312.14 per flight. Thereafter, plaintiff filed the proposed contract between itself and prospective charter passengers with the Civil Aeronautics Board ("CAB"). As required by CAB regulations, that agreement provided

by both said punishments, in the discretion of the court.

2. The amended complaint omitted claims asserted in the original complaint under section 2 of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13, and section 404(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b). It also added allegations of concerted activity between TWA and certain unidentified travel agents for purposes of the section 1 claim.

3. The Court recognizes the well established rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts *in support of his claim which would entitle him to relief.*" *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); *see also Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10, 14 (S.D.N.Y.1976), *aff'd* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977).

that a charter participant had the right to cancel his reservation and receive a full refund from plaintiff were the charter price to be increased.

In March 1979, defendant filed two notices of price increase with the CAB. One increased the price of TWA's transatlantic charter flights and was to take effect June 5, 1979; the other increased the price of TWA's regularly scheduled transatlantic flights and was to take effect May 1, 1979.[4]

In April 1979, defendant notified plaintiff that the price of the contracted charter flights to Rome that departed on or after June 1, 1979 would be increased by five per cent. At that time, charter flight tickets had already been purchased by plaintiff's customers. At about the same time, defendant decided that the seven per cent price increase for its regularly scheduled flights to Rome departing on or after June 1, 1979 would not apply to tickets purchased prior to June 1, 1979. Because of defendant's acts, plaintiff cancelled its charter agreement with defendant and abandoned its 1979 charter program to Italy.[5]

Plaintiff claims that defendant violated the antitrust laws by retroactively applying a price increase that affected plaintiff's customers while pursuing a fare protection policy with respect to its own passengers.

In support of its claim under section 1 of the Sherman Act, plaintiff further asserts that defendant adopted a "predatory pricing policy" and acted in concert with "various favored travel agents of the defendant" in promoting the sale of tickets on TWA's regularly scheduled flights to Italy in a manner intended to divert plaintiff's customers to TWA and to eliminate plaintiff as a competitor. See Amended Complaint paras. 17–25. The complaint also alleges that the travel agents were competitors of plaintiff and "actively participated in, aided and abetted the promotion of the predatory price policies of the defendant."[6] Id. para. 18.

In support of its claim under section 2 of the Sherman Act, plaintiff alleges simply that "defendant, together with two other air carriers dominate the market for air transportation between points in the United States and Italy[,]" id. para. 22, and that the acts of defendant and the travel agents "tended to unlawfully maintain and increase defendant's monopolistic power," id. para. 25.

For these alleged violations, plaintiff seeks treble damages, plus interest, costs and disbursements, and attorney's fees.

## DISCUSSION

*Section 1 Claim*

■ ■ Plaintiff's claim under section 1 of the Sherman Act is insufficient and must be dismissed. Section 1 prohibits contracts, combinations, or conspiracies in restraint of trade. It does not prohibit unilateral business decisions. *E.g., Beech Cinema, Inc. v. Twentieth Century-Fox Film Corp.,* 622 F.2d 1106, 1107 (2d Cir.1980); *Modern Home Institute, Inc. v. Hartford Accident & Indemnity Co.,* 513 F.2d 102, 108–09 (2d Cir.1975). When stripped of its conclusory allegations that defendant and certain travel agents "combined and acted in concert," *see* Amended Complaint paras. 17–19, the amended complaint alleges nothing more than that TWA made a unilateral pricing decision which adversely affected plaintiff's business. There are no facts pleaded that even remotely support an inference that the travel agents participated in that decision in any way or that they knew about it prior to its announcement.

A similar claim under section 1 was rejected in *Levitch v. Columbia Broadcasting System, Inc.,* 495 F.Supp. 649 (S.D.N.Y.1980), *aff'd,* 697 F.2d 495 (2d Cir.1983).

---

**4.** TWA later postponed the effective date of the fare increase for its regularly scheduled flights one month until June 1, 1979.

**5.** After plaintiff cancelled the charter agreement, defendant commenced a state court action to recover $47,734.13 in contract cancellation charges which World Arrow refused to pay.

**6.** The travel agents are not defendants in this action and are nowhere identified.

In *Levitch,* a group of independent film producers and directors asserted antitrust and constitutional claims against three national broadcasting networks and their local television affiliates. The network defendants had each adopted a policy of producing their own news and documentary programs and offered only those in-house productions to their affiliates for transmission. 495 F.Supp. at 654. Plaintiffs contended that this policy of in-house production was the result of illegal agreements among the network defendants and/or their affiliates which were designed to exclude the independent producers and directors from the documentary film market. *Id.*

The court dismissed plaintiffs' section 1 claim stating that:

Plaintiffs' allegations, with respect to the intra-network conspiracies, amount to nothing more than a charge that since each of the network defendants has decided to produce [its] documentary programs in-house, the fact that it enters into affiliation agreements constitutes a conspiracy in restraint of trade. Thus, plaintiffs simply object to the fact that the network defendants have decided to produce their documentary programs in-house and offer these programs to their affiliates. And, when stripped of the bald charge of conspiracy, this charge amounts to nothing more than a reassertion of plaintiffs' monopolization claims. The plaintiffs have done nothing more than strategically insert the conclusory allegation of conspiracy in an effort to state a § 1 violation. In short, the allegations reveal only a unilateral decision on the part of the network defendants,

vis-a-vis the affiliates, to produce their documentaries in-house.

495 F.Supp. at 673; *see also Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,* 602 F.2d 1025, 1030–31 (2d Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979).

World Arrow's section 1 claim suffers from the same defect, and the court's analysis in *Levitch* is equally applicable to the instant case. The essence of plaintiff's allegations is that TWA adopted a policy of applying fare increases retroactively to charter flights without doing so for its commercial flights, and that TWA did so in an effort to eliminate plaintiff as a competitor. No facts pleaded in the amended complaint suggest that that policy was anything other than a unilateral business decision by TWA. The fact that travel agents that may have been competitors of plaintiff sold tickets at the prices called for by TWA's policy does not permit any rational inference that they played any role whatsoever in causing TWA to adopt that policy. It follows that plaintiff's claim under section 1 must be dismissed.[7]

*Section 2 Claim*

■ Plaintiff's section 2 claim must also be dismissed. The amended complaint fails to sufficiently allege that TWA possesses monopoly power in the relevant market.[8] The bare allegation that TWA "together with two other air carriers dominate the market for air transportation between points in the United States and Italy[,]" without more, is legally insufficient. *See Consolidated Terminal Systems, Inc. v. ITT World Communications, Inc.,* 535 F.Supp. 225, 228–29 (S.D.N.Y.1982); *see also Levitch v. Columbia Broadcasting Systems, Inc.,* 495 F.Supp. 649, 665 (S.D.N.

---

7. In light of this Court's determination that plaintiff's section 1 claim is insufficient, it is unnecessary to address TWA's alternate ground for dismissal—that the claim is barred in light of the Supreme Court's decision in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

8. As a threshold requirement to stating a valid monopolization claim, a plaintiff must allege that the defendant enjoys monopoly power in

the relevant market. *United States v. Grinnell Corp.,* 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966); *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 274 (2d Cir. 1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Monopoly power is "the power to control prices or exclude competition." *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956).

Y.1980). Plaintiff nowhere sets forth any facts as to TWA's market share and has pleaded no facts indicating that TWA has the power to fix prices or exclude competition in the alleged relevant market.[9]

Although plaintiff argues that it is not required to plead TWA's particular market share, citing *Broadway Delivery Corp. v. United Parcel Service of America, Inc.*, 651 F.2d 122 (2d Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981), that case does not support the sufficiency of plaintiff's amended complaint. In *Broadway Delivery*, the Second Circuit held only that the district court erred in instructing a jury that finding defendants' market share to be less than fifty per cent precluded a finding of monopoly power. *Id.* at 130. Indeed, the court emphasized, that where market share data were lacking, the plaintiff "must produce unambiguous evidence that the defendant has the power to control prices or exclude competition." *Id.* Since the amended complaint neither alleges TWA's market share *nor* any facts that would permit an inference that TWA had the power to control prices or exclude competition, it fails to state a monopolization claim. *Cf. Keco Industries, Inc. v. Borg-Warner Corp.*, 334 F.Supp. 1240, 1245–46 (M.D.Pa.1971).

██ Having concluded that plaintiff's allegations in support of a section 2 claim are insufficient, the question remains whether plaintiff should be given leave to replead. Following oral argument of defendant's motion, counsel for plaintiff submitted statistics to the Court purporting to show that TWA possesses a 51.8 per cent share of the relevant market. Counsel for defendant has identified several serious flaws in the data submitted by plaintiff, and it seems unlikely that plaintiff will be able to state facts sufficient to correct the defects in its present pleading; however, in keeping with the liberal policies enunciated in Fed.R.Civ. Pro. 15(a), *see Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Court will allow plaintiff one further opportunity to plead a sufficient section 2 claim.

### CONCLUSION

Defendant's motion to dismiss plaintiff's amended complaint for failure to state a claim is granted. Plaintiff has leave to file a second amended complaint within thirty days of the date of this Order to assert a monopolization claim under section 2 of the Sherman Act. This action is transferred to the suspense docket of this Court until such time as the second amended complaint is filed.

It is SO ORDERED.

---

9. Furthermore, the appropriate market for the instant claim may well be the market for air travel between New York City and Rome, not between the entire United States and all of Italy, as plaintiff seems to assume. In defining a relevant market for purposes of a section 2 claim, courts must evaluate whether consumers consider commodities as reasonably interchangeable for the same purpose. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395, 76 S.Ct. 994, 1007, 100 L.Ed. 1264 (1956). World Arrow has alleged no facts to indicate that consumers would view flights between U.S. cities other than New York and points in Italy other than Rome as reasonably interchangeable. Thus, not only has plaintiff failed to allege adequately that TWA dominated the market for air transportation between the United States and Italy, it has also failed to allege facts from which the Court could infer that that is the relevant market for purposes of this action. This deficiency must also be dealt with in plaintiff's second amended complaint.