**REITER'S BEER DISTRIBUTORS, INC., Plaintiff,**

v.

**CHRISTIAN SCHMIDT BREWING CO., Defendants.**

**No. 86 CV 534.**

United States District Court, E.D. New York.

March 10, 1987.

Parker, Chapin, Flattau & Klimpl, New York City (Barry J. Brett, Martin J. Bunin, of counsel), for plaintiff.

Golenbock & Barell, New York City (Leonard W. Wagman, Leonard A. Benowich, of counsel), for defendants.

McLAUGHLIN, District Judge.

Plaintiff's motion to amend its complaint was referred to United States Magistrate Carol Bagley Amon. I have carefully reviewed her Report and Recommendation ("R & R") and the objections thereto, and it is hereby adopted as the Opinion of the Court in all respects except one.

The Magistrate recommended that plaintiff not be permitted to amend the complaint to add a RICO claim, *see* 18 U.S.C. § 1962(c). In doing so she noted that the mail fraud predicate acts were not pleaded with the particularity required under Fed. R.Civ.P. 9(b), and that the complaint was deficient in its allegations as to the existence of a pattern of racketeering activity. Plaintiff argues that the latter holding is undercut by *United States v. Ianniello*, 808 F.2d 184 (2d Cir.1986), which was decided after the issuance of the Magistrate's report. I agree, and therefore do not adopt the portion of the Report and Recommendation addressed to the pattern requirement.

The Magistrate held, based on cases in this Circuit decided after *Sedima S.P. R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), that it was no longer the rule that a RICO violation could be established through proof of two predicate acts in furtherance of a single scheme to defraud: "[S]ince *Sedima*, a number of decisions have held that predicate acts of mail fraud that all arise from one alleged unlawful scheme do not constitute a pattern of racketeering activity, at least in the absence of a threat of continuing activity" (R & R at 23–24). She concluded that plaintiff had failed to satisfy the pattern requirement because the "predicate acts alleged in the amended complaint possibly involved, at most, a single fraudulent scheme to terminate Reiter's and obtain its business" (R & R at 24).

In *Ianniello*, however, the Court held that "an enterprise with 'a single purpose' ... can provide the basis for a section 1962(c) violation." 808 F.2d at 191. It expressly rejected the cases that required two or more schemes under the definition of pattern. *See id.* at 192 n. 15.

The Second Circuit stated that the concern of the Supreme Court in *Sedima* footnote 14, *see* 105 S.Ct. at 3285 n. 14—that a RICO violation requires continuity plus relationship—was "best addressed in the context of the concept of 'enterprise.'" *Ian-*

*niello*, 808 F.2d at 191. The enterprise must be a continuing operation, and the predicate acts must be related to its common purpose. Accordingly, "when a person commits at least two acts that have a common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied." [1]  *Id.* at 192. Thus, because the Magistrate's holding that the pattern had not been established rested on the now-discredited view that a single scheme or purpose was insufficient, I decline to adopt her holding on that point.

█ That does not end the matter, however. The Magistrate also found fault with the RICO allegation because the mail fraud predicates were not pleaded with particularity. Because she also found, based on her analysis of the pattern requirement, that the proposed amended complaint failed to state a claim under RICO, she concluded that amendment would be futile. I am, however, constrained by the intervening *Ianniello* decision to find that a claim has been stated, and I also therefore hold that plaintiff may attempt to cure the particularity defect by amending the RICO allegations of the complaint. The Magistrate's Report and Recommendation is adopted in all other respects.

SO ORDERED.

CAROL BAGLEY AMON, United States Magistrate.

Plaintiff Reiter's Beer Distributors, Inc. ("Reiter's"), a New York Corporation, filed suit in the Supreme Court of the State of New York against defendant, Christian Schmidt Brewing Company ("Schmidt"), a Pennsylvania Corporation, for a declaratory judgment stating that the contractual agreements between Reiter's and Schmidt are in full force and effect, and for a permanent injunction to prevent Schmidt from terminating Reiter's as a distributor of Schmidt's beer products. On February 7, 1986, Reiter's obtained a temporary restraining order from the Honorable Gerald Adler of the Supreme Court of New York enjoining Schmidt from terminating Reiter's. Thereafter, the case was removed to federal district court on Schmidt's motion, on the grounds of diversity of citizenship and the fact that the amount in controversy exclusive of interest and costs exceeds $10,000. Plaintiff then moved for a preliminary injunction to enjoin defendant from terminating Reiter's, and moved to file an amended complaint to add two new claims, a cause of action under the Sherman Act, 15 U.S.C. §§ 1 and 2, and the Donnelly Act, Gen.Bus.Law § 340 (McKinney's 1968), and a cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"). The proposed amended complaint contains a third claim alleging breach of contract.

A hearing was conducted on June 6 and June 9, 1986 on the preliminary injunction motion, and a separate Report and Recommendation was filed on July 29, 1986, containing the undersigned's findings with respect to that motion. The factual background of the case, and the history of dealings between the parties are provided in greater detail in that Report.

Schmidt opposes Reiter's motion to amend to add the antitrust and RICO claims, contending that the antitrust claims are largely composed of immaterial and prejudicial material, and that the RICO claim is deficient.

Reiter's avers the following facts in support of its inclusion of these new claims, which, for purposes of considering the defendant's motion are assumed to be true.

---

1. In *Ianniello*, the single purpose of the enterprise was "fraud continuing indefinitely," 808 F.2d at 191—specifically, skimming profits from various businesses. It "had no obvious terminating goal," *id.* at 192, so the enterprise element was clearly established. Here it could be argued that the enterprise—the purpose of which was "to terminate Reiter's and obtain its business" (R & R at 24)—did have an obvious terminating goal: driving plaintiff out of business, or at least out of the business of distributing defendant's products. The distinction does not really help defendant here, however. Plaintiff has alleged a continuing course of activity—in fact, three years' worth—in pursuit of that goal. Moreover, defendant does not appear to object to the sufficiency of the pleading of the enterprise requirement.

## The Antitrust Claim

By written agreement dated February 10, 1978, Schmidt appointed Reiter's as "the wholesaler" for Rheingold beer distribution in Brooklyn. Reiter's paid Schmidt a royalty on each case of Rheingold it bought over the next three years. Amended Complaint, ¶ 13. The term of the agreement was never specified but it was orally agreed between the parties that Reiter's would retain its rights "as long as it did a good job". ¶ 14. In 1981 a second agreement was made whereby Schmidt appointed Reiter's as one of two exclusive distributors of Schmidt's beer in Kings County. Again, it was agreed that Reiter's would continue to serve as one of two exclusive distributors for Schmidt's beer as long as it did a satisfactory job. ¶ 15.

In 1981 Schmidt acquired Midway Distributors, Inc. ("Midway"), a competitor of Reiter's. ¶ 17. Reiter's alleges that Schmidt and/or Midway then sought to buy Reiter's, and further, sought to coerce Reiter's into selling out "for inadequate consideration". ¶¶ 17–19. Schmidt sought to coerce Reiter's to "enter into unlawful agreements" and "unlawful combinations". ¶ 17.

In December 1985 Schmidt wrote to Reiter's announcing its intention to terminate their relationship as of February 7, 1986. Schmidt continued to negotiate to buy Reiter's as late as January 1986. ¶ 19.

The essence of Reiter's antitrust claim is contained in paragraphs 21 and 22 of its Amended Complaint. Reiter's claims that Schmidt has

a) Given Midway the ability to sell in Brooklyn;

b) Given Midway the ability to sell Rheingold in Brooklyn at predatorily low price levels;

c) Caused or permitted Midway to demand that Reiter's cease and desist from competing for Midway customers on threat of termination by Schmidt;

d) Coerced Reiter's with respect to its willingness "to sell to customers from other boroughs than Brooklyn at your [Reiter's] dock" and demanded "You [Reiter's] are going to discontinue that practice and Midway Beverage is going to decide whether to discontinue selling Rheingold in Brooklyn." [1]

e) Met with members of the "Thrifty" group of beer retailers and conspired with them to fix prices and allocate territories at the wholesale and retail levels of beer distribution;

f) Otherwise sought to allocate territories and facilitate Midway's efforts to allocate territories and destroy competition with such distributors as Four Star Beer Distributors, Inc. and Prospect.

In the Fall of 1985 Rogers La Prairie, a manager of Midway, demanded that Reiter's stop competing with Midway or he would cause Schmidt to terminate Reiter's. ¶ 22.

Reiter's claims that competition has been restrained by the course of events reiterated above and that Reiter's has incurred incalculable damages. ¶¶ 17, 23, 24.

## The RICO Claim

In support of its RICO claim, Reiter's alleges that Schmidt devised and undertook fraudulent schemes to appropriate Reiter's business. It claims that Schmidt made false representations and used false pretenses in attempting to purchase Reiter's business at a low price or without any payment. Further, Reiter's asserts that Schmidt "vitiated Reiter's right to distribute ... Rheingold and Schmidt ... exclusively in Brooklyn". ¶ 33. Schmidt attempted to coerce Reiter's to relinquish its exclusive distributorship of Rheingold in

1. Schmidt notes in the Affidavit of Robert L. Welty submitted in Opposition to the Motion to Amend the Complaint, that Reiter's has misquoted the letter from John P. Jones, Schmidt's Vice President for Marketing and Sales. The letter summarized a meeting held between the parties on July 17, 1984, and reads as follows:

3. You continue to sell customers from other boroughs than Brooklyn at your dock.
*Status:* You are going to decide whether you are going to discontinue that practice and Midway Beverage is going to decide whether to discontinue selling Rheingold in Brooklyn.

Brooklyn to Midway; and to obtain an agreement from Reiter's to cease competing with Midway outside of Brooklyn. ¶ 33. The appointment of Midway as a distributor of Schmidt, and the allowance of Midway's distribution of Rheingold in Brooklyn, were part of the fraudulent scheme. ¶¶ 33, 38.

This scheme was effected through the mails, viz., letters and memoranda sent to officers of Reiter's by Schmidt. ¶ 34. Reiter's alleges that each of seven mailings by Schmidt constitutes a separate and distinct violation of 18 U.S.C. § 1341, [the mail fraud statute] and an act of racketeering. ¶ 34. The criticism in a number of these letters of Reiter's distribution efforts was not genuine, according to Reiter's, and was part of Schmidt's scheme to defraud and obtain money and property through false pretenses. ¶ 35.

### 1. The Motion to Amend

Defendant opposes plaintiff's proposed amendments on the ground that the amendments are made in bad faith and would be futile. Defendant contends that the antitrust claim is "specious and unsupported" and is replete with immaterial, impertinent and scandalous matter. Defendant's Memorandum of Law of May 30, 1986, at pp. 4, 16–19. The amendment to add the RICO claim should be denied, defendant maintains, because it fails to state a colorable claim.

As a general proposition, leave to amend a complaint "shall be freely given when justice so requires," Rule 15 Fed.R. Civ.P. If the plaintiff has at least colorable grounds for relief, the amendment should be permitted unless the plaintiff has acted in bad faith or is guilty of undue delay, or if permission to amend would unduly prejudice the defendant. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Kaster v. Modification Systems, Inc.*, 731 F.2d 1014 (2d Cir. 1984); *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979); *WIXT Television, Inc. v. Meredith Corporation*, 506 F.Supp. 1003, 1010 (N.D. N.Y.1980). "Amendment should be re-

fused only if it appears to a certainty that plaintiff cannot state a claim." 5 Wright & Miller § 1357 at 612–13. However, leave to amend is properly denied when the pleading, as amended, would be subject to dismissal. *Outboard Marine Corp. v. Pezetel*, 535 F.Supp. 248 (D.C.Del.1982). The inquiry into whether the proposed amendments state a claim for which relief could be granted is essentially the same as the inquiry required by Fed.R.Civ.P. 12(b)(6). *CBS, Inc. v. Ahern*, 108 F.R.D. 14 (S.D.N. Y.1985). Plaintiff's antitrust and RICO claims are analyzed against this backdrop of liberal pleading requirements.

### A. The Antitrust Claims

According to the proposed amended complaint, the antitrust claims set forth in Count 1 are jurisdictionally predicated on Sections 1 and 2 of the Sherman Act, and the Donnelly Act (General Business Law, § 340). Although Count 1 identifies in paragraph 21 a variety of activity, some of which describes behavior traditionally recognized as anti-competitive, the allegations in the complaint are not sufficiently set forth for this Court to conclude that plaintiff has stated a claim under the various cited provisions of the antitrust laws.

In general, in order to allege antitrust violations the plaintiff must allege "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *International Television Productions Ltd. v. Twentieth Century-Fox Tel.*, 622 F.Supp. 1532, 1538 (S.D.N.Y. 1985), quoting *Brunswick v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Section 1 of the Sherman Act proscribes "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Absent an agreement between two or more independent business entities there

can be no violation of the Sherman Act. Allegations of an illegal conspiracy in restraint of trade must, to survive a motion to dismiss, identify the co-conspirators and describe the nature and effects of the alleged conspiracy. Except in cases where *per se* violations of the antitrust laws are alleged, plaintiffs alleging § 1 violations must show that the defendants acted to restrain competition. 1 E. Kintner, Federal Antitrust Law § 8.3 (1980). In addition, the complaint must identify the relevant product market and allege the manner in which the net economic effect of the antitrust violations restrains trade in the relevant market, and that no reasonable alternative source is available to consumers in that market. *International Television Productions Ltd. v. Twentieth Century-Fox Tel.*, 622 F.Supp. at 1539 (S.D.N.Y. 1985); *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F.Supp. 1348, 1354 (S.D. N.Y.1982).

■ In cases involving allegations of *per se* violations of the antitrust laws, the plaintiff need not demonstrate the negative economic impact of these violations on the relevant market. *Northern Pacific Railway v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). An agreement between competitors at the same level of the market structure to allocate territories to minimize competition is referred to as a horizontal territorial restraint, and has been held to be a *per se* violation of § 1 of the Sherman Act. *United States v. Topco Associates, Inc.*, 405 U.S. 596, 608, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972).

Reiter's has described the gravamen of its antitrust claim as a *per se* violation of the antitrust laws in that it alleges a "horizontal arrangement and restraint of trade" by Midway, facilitated and countenanced by Schmidt. Plaintiff further contends that Reiter's termination by Schmidt was in furtherance of this restraint.[2] As Schmidt points out, and Reiter's does not dispute, Schmidt cannot conspire or combine with Midway, its wholly owned subsidiary.

*Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). What is thus not clear from the complaint, or from Reiter's explanation of its claim, is the identity of the two entities constituting the combination or conspiracy in this horizontal restraint. Unless Reiter's is claiming that Midway's actions are part of the overall agreement among the retailers referred to in paragraph 21(e) (which it does not allege), this court can only infer that the theory is that Reiter's together with Midway constitutes the combination in restraint of trade.

■ The horizontal combination prohibited by Section 1 may arise where retailers *acquiesce* in the restraint of trade (*e.g.*, in the form of allocation of territories or adherence to suggested prices) proposed by other retailers. One retailer's cooperation, obtained through threats from a similarly situated retailer, is sufficient to constitute a "combination" within the meaning of Section 1. *See Albrecht v. Herald Co.*, 390 U.S. 145, 149, 88 S.Ct. 869, 871, 19 L.Ed.2d 998 (1968). Without acquiescence, there is no "combination" or "conspiracy" within the meaning of the Sherman Act. *Albrecht, supra; Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 142, 88 S.Ct. 1981, 1986, 20 L.Ed.2d 982 (1968) (unwilling compliance with restrictive franchise agreements and acquiescence induced by threats of termination amounted to an illegal combination between the parties.) *Chisholm Brothers Farm Equipment Co. v. International Harvester Co.*, 498 F.2d 1137, 1140 n. 6 (dicta) (9th Cir.), *cert. denied*, 419 U.S. 1023, 95 S.Ct. 500, 42 L.Ed.2d 298 (1974); *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1266 (9th Cir.1983) (little evidence that plaintiff acquiesced in defendant's demands—no *Albrecht* conspiracy established).

On the face of the complaint, it is unclear whether Reiter's is alleging that it together with Midway formed the combination and that it acquiesced in coercive demands by Midway. ¶ 21 of the Amended Complaint alleges that Midway demanded that Reit-

2. Reiter's letter to Magistrate Amon dated June 19, 1986 at p. 4, ¶ 3; see, also Plaintiff's Reply Memorandum of Law in Support of its Motion for a Preliminary Injunction Point III.

er's cease competing (by not selling to Midway's customers), but fails to further allege that Reiter's complied with these demands.

Since Reiter's may in fact be in a position to allege the requisite conspiratorial activity, it should be granted leave to replead its complaint in order to make out a sufficient allegation of a horizontal restraint of trade.

¶ 21(e) and (f) broadly allege that *Schmidt* conspired with the "Thrifty" group of beer retailers to "fix prices and allocate territories". Although the conspirators are identified and the conduct alleged constitutes a violation of the antitrust laws, material details such as, at the very least, a general time period during which these meetings occurred, are notably missing. Accordingly Reiter's should be given leave to replead to more fully develop this theory.

Reiter's monopoly claim under § 2 of the Sherman Act, in its current form, would be subject to a motion to dismiss. To establish a monopoly under § 2 of the Sherman Act two elements must be shown: the possession of the power to control market prices and exclude competition within the relevant market, and the willful acquisition or maintenance of that power. ABA Antitrust Section, Antitrust Law Developments (2d ed. 1984). The essential elements of attempted monopolization under Section 2 of the Sherman Act are a "dangerous probability of success" in monopolizing a given product market and a specific intent to "destroy competition or build monopoly." *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 841 (2d Cir.1980) quoting *Times-Picayune Publishing Co. v. United States*, 345 U.S. 594, 626, 73 S.Ct. 872, 890, 97 L.Ed. 1277 (1953). Reiter's has not alleged any facts that even tend to show that Schmidt and/or Midway have a share of the market it identifies as relevant (non-premium beer in the identified geographic markets) that is substantial enough to enable them to attempt to control market prices or exclude competition. The broad references in ¶¶ 7 and 11 to sales of non-premium beer consti-

tuting twenty-five percent of the total sold nationally in 1985, and to the nature of the market in New York in 1977, are of dubious relevance. Bare allegations of market information that is almost ten years old, without more, are simply insufficient to support a Section 2 claim. If, however, Reiter's can marshal facts sufficient to establish a monopoly claim it should be permitted to do so. Accordingly, Reiter's should be permitted to replead to add a Section 2 claim, if the facts so justify. *See World Arrow Tourism Enterprises, Ltd. v. Trans World Airlines, Inc.*, 582 F.Supp. 808, 811 (S.D.N.Y.1984); *Vereins-Und Westbank AG v. Carter*, 639 F.Supp. 620 (S.D.N.Y.1986).

In sum, in light of the liberal pleading requirements of Fed.R.Civ.P. 15(c), Reiter's should be permitted to further amend its complaint in accordance with the findings set forth herein.

## B. The Motion to Strike

Federal Rule of Civil Procedure 12(f) provides in pertinent part:

Upon motion made by a party ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Schmidt contends that leave to amend should be denied because many of the allegations set forth in Count I–Antitrust Claims, Paragraphs 7 through 25, contain immaterial, impertinent and scandalous matter and would be subject to a Motion to Strike under Rule 12(f). Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Amend its Complaint, pp. 16–18; Affidavit of Robert L. Welty in Opposition to Plaintiff's Motion for Leave to Amend the Complaint.

Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute. *Magnavox Co. v. APF Electronics, Inc.*, 496 F.Supp. 29 (N.D.Ill.1980); *Fuchs Sugars & Syrups, Inc. v. Amstar Corporation*, 402 F.Supp.

636, 637 (S.D.N.Y.1975). Where the materiality of the alleged matter is highly unlikely, or where its effect would be prejudicial, the Court may order it stricken. *Atlantic City Electric Co. v. General Electric Co.*, 207 F.Supp. 620, 624 (S.D.N.Y. 1962); *Mil-Hall Textile Co. v. Dun & Bradstreet, Inc.*, 160 F.Supp. 778, 781 (S.D.N.Y.1958). A motion to strike will be granted if the disputed matter is irrelevant "under any state of facts which could be proved in support" of the claims being advanced. *Trusthouse Forte, Inc., v. 795 Fifth Avenue Corp.*, No. 81 Civ 1698 (S.D. N.Y. Sept. 1, 1981) (Motley, J.) (slip opinion available on Lexis).

Recognizing that motions to strike are not favored motions, this Court nonetheless finds that the allegations contained in paragraph 8, beginning with the third sentence, through paragraph 10, have no relevance to the issues in dispute. If the proposed amended complaint were filed, these allegations would be properly stricken under Rule 12(f).

Although the information set forth in paragraphs 8 through 10 is included in a section of the complaint labeled "The Nature of Trade and Commerce", it is hard to fathom how it pertains to that subject matter.[3] It appears rather to describe the history of litigation in the beer industry in general, and the history of Schmidt's litigation in particular—information which has no bearing on the issues in dispute and which is prejudicial to Schmidt.

Reiter's assertion in ¶ 8 that unidentified brewers and distributors have attempted "for many years past" to secure federal legislation that would exempt exclusive beer distributors from operation of the federal antitrust laws, is wholly irrelevant. Plaintiff does not allege that Schmidt has engaged in these attempts, nor is the period in which they purportedly occurred defined. As Schmidt notes in Robert Welty's Affidavit, and this Court agrees, these allegations constitute an attempt by Reiter's to imply that Schmidt sought legislative protection for its distribution system at some point in the past. Reiter's has not suggested that it will produce evidence to that effect. Indeed, even had Schmidt engaged in such lobbying attempts, it is questionable whether such an allegation would be relevant and proper. *See, e.g., United States Football League v. National Football League*, 634 F.Supp. 1155 (S.D.N.Y. 1986), (opinions # 3 and # 4) (Leisure, J.) (lobbying efforts are 'protected conduct' under the *Noerr-Pennington* doctrine, and evidence thereof is admitted only if its probative value, and the party's need to rely thereon, outweigh the prejudice to the opposing party's First Amendment rights).

Similarly, paragraph 9 of the Amended Complaint alleges that the Attorney General of New York has instituted proceedings against beer wholesalers for antitrust violations by wholesalers and distributors. Schmidt is not alleged to be one of the wholesalers involved in that proceeding. These allegations about proceedings by the Attorney General imply, without so stating directly, that the Attorney General has begun an investigation into Schmidt's practices in this case. Again, Reiter's has not suggested it will produce evidence of such an investigation, thus such allegations should be stricken, as they do not provide material, relevant information, and their only effect is to prejudice Schmidt.[4]

---

3. Plaintiff cites 9 Von Kalinowski § 105.02[5] as authority for the section of the amended complaint bearing this heading. Plaintiff's assertion that the allegations contained within that section are "squarely within the usual and permitted scope of pleading an antitrust claim" (Plaintiff's Reply Memorandum in Support of Motion to Amend Complaint) is untenable. § 105.02[5] provides a guide for making the proper jurisdictional allegations, and for alleging, in that context, that the acts complained of affect interstate commerce of a business. The kind of information offered by Reiter's has no bearing on this jurisdictional question.

4. A copy of the complaint in *State of New York v. Anheuser-Busch, Inc., et al.* was sent by plaintiff to Magistrate Amon on July 17, 1986. Defendant noted in its July 18, 1986 letter to Magistrate Amon that Schmidt is not one of the four breweries named in that complaint. Furthermore, although both Reiter's and Midway are among the defendant distributors, a review of the complaint reveals that neither of them is named by reason of any conduct or practice either by Schmidt or related to the sale or distribution of Schmidt's products. Thus any

Paragraph 9 does not name any parties, but refers to "legislative battles.... fought in New York regarding beer distribution practices and ... efforts to preclude certain structures as anti-competitive." This information does not appear to have any relation to the subject matter under which it was included, *i.e.,* "The Nature of Trade and Commerce", or to have any informational value whatsoever, and prejudices the defendant by implication and innuendo. No effort is made to connect these assertions to plaintiff's claims in this lawsuit. Legislative battles waged by unnamed parties over unspecified "structures" at an undisclosed time in the past are simply immaterial.

Paragraph 10 alleges that the beer industry and Schmidt in particular have "been the subject of considerable other litigation revealing a pattern of disregard for the antitrust laws." ¶ 10, p. 4. References to other litigation and the context in which they are made, are improper and irrelevant. Indeed, plaintiff erroneously cites *North Shore Bottling Co. v. C. Schmidt and Sons, Inc.,* 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968), which involved a statute of frauds problem, as an example of "other litigation ... revealing a pattern of disregard for the antitrust laws". This case does not reveal a pattern of disregard for the antitrust laws, by Schmidt or by anyone else, since the resolution of the case did not rest on a finding of antitrust violations.

Similarly misplaced is Reiter's reference to *Matt Lamb & Sons, Inc. v. Christian Schmidt Brewing Co.,* 336 Pa.Super. 341, 485 A.2d 836 (1984). This case did not involve antitrust violations. Rather, the case involved the issue of whether there was "good cause" to terminate a distributor. Reiter's inclusion of this case in its proposed amended complaint as factual evidence of Schmidt's past anticompetitive activity is disingenuous at best. Reiter's cita-

tion of *United States v. Arnold Schwinn,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), which was overruled by *Continental T.V. Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), as prevailing authority prohibiting a system of exclusive distributorships, is equally disingenuous.[5]

However, even if *North Shore,* along with others cited by plaintiff, did involve antitrust violations, plaintiff has not sufficiently connected these past cases, or the factual settings therein, to the present action to render references thereto relevant and immune from a motion to strike. *Victory Markets v. Roy Nelson,* 81 Civ 1370 (N.D.N.Y. Apr. 1, 1982) (Munson, J.) [Available on WESTLAW, DCT database] (slip opinion available on Lexis) (descriptions of defendant's past convictions and violations of federal securities laws irrelevant and possibly prejudicial); *See also, Maple Drive-In Theatre Corporation v. Radio-Keith-Orpheum Corporation,* 17 F.R.D. 226 (S.D.N.Y.1955) and *New Dyckman Theatre Corporation v. Radio-Keith-Orpheum Corporation,* 16 F.R.D. 203 (S.D.N.Y.1954) (allegations of all alleged wrongdoing of the motion picture industry for past thirty years stricken).

This Court is aware of the admonition of the Second Circuit in *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir.1976) that a court should not "decide to strike a portion of the complaint—on the grounds that the material could not possibly be relevant—on the sterile field of the pleadings alone". However, here the court's ability to determine questions of materiality and relevancy, has been enhanced by the presentation of numerous exhibits and evidence in a two day injunction hearing. *See United States Football League, et al. v. National Football League, et al.,* 634 F.Supp. 1155 (S.D.N.Y. Apr. 24, 1986) (opinion # 3).

Accordingly this Court recommends that plaintiff be permitted to replead its anti-

allegation concerning that proceeding in Reiter's proposed amended complaint is irrelevant.

**5.** *Continental TV Inc. v. GTE Sylvania* 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977) overruled the rule of *Arnold Schwinn* which made

restrictions of resale locations by a wholesaler a *per se* violation of Section 1 of the Sherman Act. *Sylvania* held that such restrictions of location should be judged under the traditional rule-of-reason standard.

trust claim, but with the proviso that it omit the irrelevant material discussed above.

### C. The RICO Claim

18 U.S.C. § 1964 (1982) provides a civil remedy for violations of RICO. Under this statute, a party injured in his business or property by reason of a RICO violation may recover treble damages and attorney's fees. 18 U.S.C. § 1964(c) (1982). Reiter's alleges that Schmidt violated the provisions of RICO by, among other means, conducting the affairs of Midway through a "pattern of racketeering activity". ¶ 39, 18 U.S.C. § 1962(c).[6] § 1961(5) defines a "pattern of racketeering" as:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity;

Reiter's alleges as the predicate acts of racketeering activity several mailings pursuant to a scheme to defraud in violation of Title 18, U.S.C. § 1341.

Schmidt contends that leave to amend should be denied because Reiter's proposed amendment fails to plead the fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure and fails to allege a "pattern of racketeering activity" as defined in Section 1961(5).

A scheme to defraud "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.1979). A complaint alleging mail fraud as the RICO predicate must specify, *inter alia*, precisely what false statements were made, when and by whom, the content of the statements and the manner in which they were misleading. *See, Serig v. South Cook County Service*

*Corp.*, 581 F.Supp. 575, 580 (N.D.Ill.1984); *Moss v. Morgan Stanley Inc.*, 719 F.2d 5 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1172 (S.D.N.Y.1985).

Although Reiter's tracks the language of the mail fraud statute in its proposed amendment, the fraud has not been pleaded with sufficient particularity. The allegations of fraud are vague and unspecific. Although the plaintiff claims that it has sufficiently pleaded fraud by listing a number of letters, the persons to and from whom each was sent, and on what dates, it fails to adequately identify the manner in which the statements in the letters sent to it by Schmidt were false or misleading or calculated to deceive. The only reference made to any possible fraudulent statements in the letters is the claim that the letters, "criticized Reiter's efforts as a distributor on the pretense of declining sales". Allegations that Schmidt sent letters, (the fraudulent aspect of which were purportedly insincere criticisms of Reiter's performance in furtherance of a scheme to defraud), without more, do not give sufficient notice to defendant of plaintiff's claims and the facts upon which they rest. *See, Eisenberger v. Spectex Industries, Inc.*, 644 F.Supp. 48 (E.D.N.Y.1986) (Nickerson, J.); *In re Catanella and E.F. Hutton and Co.*, 583 F.Supp. 1388 (E.D.Pa.1984). And although Reiter's refers in ¶ 33 to false representations and promises made by Schmidt for the purpose of appropriating Reiter's business for inadequate consideration, nowhere does it identify the source or author of these alleged misrepresentations, nor are they defined with any particularity. The complaint must allege specific facts, sources that support the alleged specific facts, and a basis from which an inference of fraud may fairly be drawn. *See Crystal v. Foy*, 562 F.Supp. 422, 424–425 (S.D.N.Y. 1983); *Property Owners against Manufacturers Hanover Trust Co. v. Manufacturers Hanover Trust Co.*, No. 85 Civ.

---

6. 18 U.S.C. § 1962(c) states:

(c) it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

7251 (S.D.N.Y. Mar. 21, 1986) (Sweet, J.). The amended complaint is deficient with respect to these fundamental criteria.

Even if the mail fraud allegations were sufficiently particular, Reiter's has not demonstrated the existence of a "pattern of racketeering activity" under 18 U.S.C. § 1961. The statute requires "at least two acts of racketeering activity". Decisions in this circuit following *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) have construed dicta in that case as narrowing the concept of "pattern of racketeering activity". Where once it was held that a RICO violation could be established through proof of two predicate acts that were part of a single scheme to defraud, since *Sedima*, a number of decisions have held that predicate acts of mail fraud that all arise from one alleged unlawful scheme do not constitute a pattern of racketeering activity at least in the absence of a threat of continuing activity.[7] In discussing the definition of "pattern of racketeering" in *Sedima*, the Court referred to the legislative history of the statute, and quoted the Senate Report: " '[T]he target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern.' " *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, quoting S. Rep. No. 991–617, p. 158 (1969).

In the present action, the RICO claim cannot stand. The underlying predicate acts alleged in the amended complaint possibly involved, at most, a single fraudulent scheme to terminate Reiter's and obtain its business. The complaint cannot fairly be read to encompass any additional fraudulent schemes nor does it allege other separate criminal episodes recognized as predicate acts under RICO. See 18, U.S.C. § 1961(1). RICO was not intended to provide redress for "sporadic activity", *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. RICO does not target "isolated events". Since Reiter's proposed amended complaint fails to state a claim for a RICO violation, amendment would be futile. Accordingly, leave to amend the complaint to add a RICO claim should be denied.

## CONCLUSION

The Court recommends that Reiter's be permitted to replead its complaint with respect to its antitrust claims eliminating the allegations discussed herein in paragraphs 8–10 of the proposed amended complaint. Leave to amend the complaint to add the proposed RICO claim should be denied.

Any objections to this Report and Recommendation should be made to Judge McLaughlin with a copy to the undersigned by September 25, 1986.

---

**7.** Cases prior to *Sedima:*

*United States v. Starnes*, 644 F.2d 673 (7th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981)

*United States v. Weatherspoon*, 581 F.2d 595 (7th Cir.1978)

*Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061 (S.D.N.Y.1983)

*Nunes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 609 F.Supp. 1055 (D.Md.1985)

Cases decided after *Sedima:*

*Crummere v. Brown*, No. 85 Civ. 1376 (S.D.N.Y. Apr. 3, 1986) (slip opinion available on Lexis)

*Furman v. Cirrito*, No. 82 Civ. 4428 (S.D.N.Y. Mar. 12, 1986)

*Commercial Agropequaria Menichetti Fuente S.A.C.I. v. Heather Trading Corp.*, No. 85 Civ. 3240 (S.D.N.Y. Mar. 27, 1986)

*Utz v. Correa*, 631 F.Supp. 592 (S.D.N.Y.1986)

*Eisenberger v. Spectex Industries, Inc.*, 644 F.Supp. 48 (E.D.N.Y.1986)

*Soper v. Simmons*, 632 F.Supp. 244 (S.D.N.Y. 1986)

*Vereins-Und Westbank AG v. Carter*, 639 F.Supp. 620 (S.D.N.Y.1986)

*Northern Trust Bank/O'Hare N.A. v. In Ryco*, 615 F.Supp. 828 (N.D.Ill.1985)

*Rush v. Oppenheimer & Co., Inc.*, 628 F.Supp. 1188, 1199 (S.D.N.Y.1985)

*Rojas v. First Bank Nat. Ass'n*, 613 F.Supp. 968 (E.D.N.Y.1985)

—but see—

*R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1355 (5th Cir.1985)

*Conan Properties v. Mattel, Inc.*, 619 F.Supp. 1167, 1170 (S.D.N.Y.1985)